

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE___ DEC 2 6 2013

*Madsen C.J.*

CHIEF JUSTICE

This opinion was filed for record
at 8:00 a.m. on Dec 26,
2013

Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No. 87680-1 |
| AMY BUECKING, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| TIM BUECKING, | ) | |
| | ) | |
| Petitioner. | ) | Filed _____ DEC 2 6 2013 _____ |
| | ) | |

MADSEN, C.J.—Amy Westman[1] filed for legal separation from Tim Buecking. Over a year later, she filed an amended petition for dissolution of marriage. By statute, a court cannot enter a decree of dissolution of marriage until 90 days after the petition is filed. Here, the decree was entered 8 days too soon. Mr. Buecking appealed, raising for the first time on appeal his claim that the trial court lacked subject matter jurisdiction because it entered the decree before the 90-day period had elapsed.

We hold that the 90-day period commences when the petition for dissolution is filed and not when a petition for legal separation, if any, is filed. We further hold that the

---

[1] Formerly Amy Buecking.

error of duration here is a legal error but not an error involving subject matter jurisdiction that may be raised at any time. We award attorney fees to Ms. Westman and affirm the Court of Appeals' award of attorney fees to her.

## FACTS AND PROCEDURAL HISTORY

Amy Westman and Tim Buecking were married on August 14, 1999. On December 12, 2008, Ms. Westman filed a petition for legal separation. Over a year later, on April 2, 2010, Westman filed an amended petition for dissolution of marriage. Within the petition, Mr. Buecking signed a statement saying, "I, the respondent, agree to the filing of an Amended Petition for Dissolution of the marriage instead of legal separation." Clerk's Papers at 90. This statement appeared just below a checked box labeled "Joinder." *Id.* (bold omitted).

RCW 26.09.030 provides that a court may enter a decree of dissolution when "ninety days have elapsed since the petition was filed." On June 23, 2010, following a trial that ended on June 15, the trial court entered a decree of dissolution 82 days after the petition for dissolution of marriage was filed.

Mr. Buecking did not object at the time to entry of the decree on the basis that the 90-day period required under the statute had not elapsed. However, he raised this issue on appeal, contending the trial court lacked subject matter jurisdiction to enter the decree before 90 days had elapsed. In an opinion published in part, the Court of Appeals held that if the trial court erred by entering a decree of dissolution before 90 days had passed, it was a legal error that did not involve the court's subject matter jurisdiction because the

court had jurisdiction to hear the controversy. *In re Marriage of Buecking*, 167 Wn. App. 555, 559-60, 274 P.3d 390 (2012).[2] The Court of Appeals awarded Ms. Westman attorney fees under RCW 26.09.140, subject to her compliance with RAP 18.1.[3]

Mr. Buecking moved for reconsideration of several issues, including the award of attorney fees to Westman. Buecking asserted that Westman failed to strictly comply with RAP 18.1 because she filed an affidavit of financial need after oral argument rather than 10 days prior to oral argument as required under RAP 18.1(c). The Court of Appeals denied the motion and upheld the attorney fees under RAP 1.2(c).[4]

## ANALYSIS

Mr. Buecking contends that the superior court exceeded its subject matter jurisdiction by entering a dissolution before the statutory 90 days had elapsed from the date the dissolution petition was filed, as required under RCW 26.09.030. Ms. Westman responds that no error occurred, arguing that the 90-day period runs from the time she filed her petition for legal separation and that if the trial court erred in entering the petition on the 82nd day, the error did not result in a loss of subject matter jurisdiction.

---

[2] Buecking also challenged the trial court's determinations of child support, asset distribution, and the parenting plan. In the unpublished portion of its opinion, the Court of Appeals determined the trial court did not abuse its discretion in its property division, calculation of child support, or by making reciprocal a restriction in the parenting plan. *In re Marriage of Buecking*, No. 66268-6-I, slip op. (unpublished portion) at 5-14 (Wash. Ct. App. Apr. 2, 2012).

[3] RAP 18.1(c) states that "[i]n any action where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees and expenses, each party must serve upon the other and file a financial affidavit no later than 10 days prior to the date the case is set for oral argument or consideration on the merits."

[4] "The appellate court may waive or alter the provisions of any of these rules in order to serve the ends of justice, subject to the restrictions in rule 18.8(b) and (c)." RAP 1.2(c).

Subject matter jurisdiction and questions of statutory construction are reviewed de novo. *ZDI Gaming, Inc. v. State ex rel. Wash. State Gambling Comm'n*, 173 Wn.2d 608, 624, 268 P.3d 929 (2012); *In re Custody of Smith*, 137 Wn.2d 1, 8, 969 P.2d 21 (1998).

### 1. 90-day period

RCW 26.09.030 states that when a party

> petitions for a dissolution of marriage . . . and alleges that the marriage . . . is irretrievably broken and when ninety days have elapsed since the petition was filed and from the date when service of summons was made upon the respondent or the first publication of summons was made, the court shall proceed as follows: (a) If the other party joins in the petition or does not deny that the marriage . . . is irretrievably broken, the court shall enter a decree of dissolution.

Here, the decree of dissolution was entered in June 2010, more than 90 days from the original petition for legal separation, but less than 90 days from the amended petition for dissolution.

Mr. Buecking points out that RCW 26.09.030 requires that a dissolution petition must contain an allegation that the marriage is irretrievably broken, which is not required in a petition for legal separation. He contends that because a petition for legal separation seeks different relief from that sought by a petition for dissolution of marriage, filing a petition for legal separation does not start the 90-day period. Ms. Westman points out that the purpose of the 90-day period is to give the parties an opportunity to reconsider and reconcile and urges that this purpose is met when 90 days elapses from the time a petition for legal separation is filed.

This appears to be an issue of first impression. *See* 21 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 46.23, at 60 (1997 & Supp. 2012) (noting that no case has ruled whether the 90-day period applies to legal separations, nor has any statute or case addressed whether a new 90-day period must apply when a petition for legal separation is amended to a petition for dissolution).

When construing statutes, the goal is to ascertain and effectuate legislative intent. *Bylsma v. Burger King Corp.*, 176 Wn.2d 555, 558, 293 P.3d 1168 (2013); *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). In determining legislative intent, we begin with the language used to determine if the statute's meaning is plain from the words used and if so we give effect to this plain meaning as the expression of legislative intent. *Manary v. Anderson*, 176 Wn.2d 342, 350, 292 P.3d 96 (2013); *Campbell & Gwinn*, 146 Wn.2d at 9. The plain meaning "is discerned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Campbell & Gwinn*, 146 Wn.2d at 11.

The relevant language is "[w]hen a party . . . petitions for a dissolution . . . and when ninety days have elapsed since *the* petition was filed . . . ." RCW 26.09.030 (emphasis added). The first use of the word "petitions" describes the action the party takes and obviously refers to filing a petition for dissolution. The second use of "petition" is a reference to the petition for dissolution that is filed to carry out this action. The use of the definite article "the" before the second "petition" refers back to use of the word "petitions" earlier in the sentence and has a specifying or particularizing effect.

*E.g.*, *City of Olympia v. Drebick*, 156 Wn.2d 289, 298, 126 P.3d 802 (2006*); Alforde v. Dep't of Licensing*, 115 Wn. App. 576, 582-83, 63 P.3d 170 (2003). Thus, "the petition" for which 90 days must have elapsed is the same petition that is filed by the party who "petitions for dissolution."

Under the plain language of RCW 26.09.030, the 90-day period runs from the time the petition for dissolution is filed. The trial court therefore erred by entering a decree of dissolution before 90 days had elapsed from the filing of the dissolution petition.

The purpose of the 90-day period is to provide a "cooling off" period. The 90-day period serves to "allow time for reflection and to act as a buffer against 'spur of the moment' arbitrary action." 20 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 43.5, at 567 (1997 & Supp. 2012). The arbitrary action that the 90-day requirement seeks to avoid is a hasty end to the marriage without time for considering whether dissolution is truly what the parties want. In the case of a legal separation, an end to the marriage cannot be presumed to be the parties' goal.

Mr. Buecking urges an additional reason to conclude that the 90-day period runs from the date the petition for dissolution of marriage is filed. Buecking notes that a 90-day period also applies under RCW 26.09.181(7), which provides that "[t]he final order or decree" of a permanent parenting plan "shall be entered not sooner than ninety days after filing and service." He infers that the 90-day period for parenting plans must be for the same reason that there is a 90-day wait before entry of decrees of dissolution, i.e., to prevent rash actions in parenting plans. Mr. Buecking urges that because RCW

26.08.181(7) expressly "does not apply to decrees of legal separation," the legislature similarly did not intend that the "cooling off" period under RCW 26.09.030 apply for purposes of legal separation. Pet. for Review at 12.

We do not agree with this argument. As the Court of Appeals observed in *In re Marriage of Wilson*, 117 Wn. App. 40, 47, 68 P.3d 1121 (2003), "[w]hile a cooling off period may, for policy reasons, be required before dissolving the marital status, no similar logic dictates a cooling off period barring parents from reaching desirable agreements in parenting plans." Because the policy underpinning of the 90-day period in RCW 26.09.030 is inapplicable to parenting plans under RCW 26.09.181, the latter statute does not provide an analogy for purposes of deciding whether the 90-day period in the former statute runs from a petition for dissolution or for legal separation.

We hold that the 90-day period in RCW 26.09.030 commences when the petition for dissolution of marriage is filed and, as the statute also provides, "from the date when service of summons was made upon the respondent or the first publication of summons was made."

2. Subject matter jurisdiction

Mr. Buecking raised the 90-day issue for the first time on appeal. Under RAP 2.5(a), a party may raise an error for the first time on review if there is a lack of subject matter jurisdiction. Where a court lacks subject matter jurisdiction to issue an order, the order is void. *In re Marriage of Schneider*, 173 Wn.2d 353, 360, 268 P.3d 215 (2011). Buecking contends that the statutory 90-day period reflects a limitation on the court's

subject matter jurisdiction. Thus, he argues that because the court erred by entering the decree of dissolution too soon, the order is void and he can raise this error for the first time on appeal.

Generally speaking, jurisdiction is the power of a court to hear and determine a case. 20 AM. JUR. 2D *Courts* § 56, at 446 (2005); *State v. Posey*, 174 Wn.2d 131, 139, 272 P.3d 840 (2012); *State v. Werner*, 129 Wn.2d 485, 493, 918 P.2d 916 (1996); *State v. Superior Court*, 112 Wash. 501, 505, 192 P. 937 (1920). Beyond this basic definition, however, Washington courts have been inconsistent in their understanding and application of jurisdiction.

Much of the confusion surrounding the concept of jurisdiction in Washington appears to stem from an evolving view of the elements of jurisdiction. Some authorities have said that jurisdiction is comprised of three elements: jurisdiction over the person, jurisdiction over the subject matter, and jurisdiction to render the particular judgment sought (sometimes called jurisdiction of the particular case). 20 AM. JUR. 2D *Courts* § 56; 1 A.C. FREEMAN, A TREATISE OF THE LAW OF JUDGMENT § 226 (5th ed. rev. 1925). This court has also referenced these elements. *Werner*, 129 Wn.2d at 493 ("'[t]here are in general three jurisdictional elements in every valid judgment'" (quoting *In re Marriage of Little*, 96 Wn.2d 183, 197, 634 P.2d 498 (1981))).

We have since clarified that jurisdiction is comprised of only two components: jurisdiction over the person and subject matter jurisdiction. *Posey*, 174 Wn.2d at 138 (citing *Werner* and stating that the discussion of the three jurisdictional elements

confused the issue and that *Werner's* distinction between a court's subject matter jurisdiction and the power or authority to render a particular judgment rested on "an antiquated understanding of subject matter jurisdiction"); *see also In re Marriage of Major*, 71 Wn. App. 531, 534, 859 P.2d 1262 (1993) ("[t]he term 'subject matter jurisdiction' is often confused with a court's 'authority' to rule in a particular manner [and t]his has led to improvident and inconsistent use of the term" (footnote omitted)). Subject matter jurisdiction refers to a court's ability to entertain a type of case, not to its authority to enter an order in a particular case. *See ZDI Gaming, Inc.*, 173 Wn.2d at 618 ("'[i]f the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction'" (internal quotation marks omitted) (quoting *Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994))); *Schneider*, 173 Wn.2d at 360 (stating the legislature limited the superior courts' authority, not jurisdiction, to modify another state's child support order by adopting the Uniform Interstate Family Support Act, chapter 26.21A RCW); *see also Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 730, 254 P.3d 818 (2011) ("[e]ither a court has subject matter jurisdiction or it does not").

Thus, our recent cases have narrowed the types of errors that implicate a court's subject matter jurisdiction. Under these cases, if a court can hear a particular class of case, then it has subject matter jurisdiction.

The legislature cannot restrict the court's jurisdiction where the constitution has specifically granted the court jurisdiction. *Posey*, 174 Wn.2d at 135 (citing *Blanchard v.*

*Golden Age Brewing Co.*, 188 Wash. 396, 418, 63 P.2d 397 (1936)). However, generally the legislature can prescribe prerequisites to a court's exercise of constitutionally derived jurisdiction. *Blanchard*, 188 Wash. at 415, 418; *see also James v. Kitsap County*, 154 Wn.2d 574, 579-89, 115 P.3d 286 (2005) (whether statutory 21-day time limitation that barred developers' challenge to imposition of fees for building permits invalidly encroached on superior court's original appellate jurisdiction under article IV, section 6 of the Washington Constitution; although a superior court may be granted the power to hear a case under article IV, section 6, the parties must still substantially comply with procedural requirements before the court can exercise its original jurisdiction); *In re Parentage of Ruff*, 168 Wn. App. 109, 117, 275 P.3d 1175 (2012) ("[n]othing in our constitution prohibits the legislature from creating procedural prerequisites to a court's exercise of jurisdiction"). Thus, legislation with the purpose or effect of divesting a constitutional court of its powers is void, while on the other hand the legislature may prescribe reasonable regulations that do not divest the court of its jurisdiction. *Blanchard*, 188 Wash. at 414, 418.

Notably, parties have avenues to challenge procedural requirements that affect a superior court's exercise of jurisdiction. In *James*, for example, the parties had several avenues to challenge the legality of fees through statutory provisions but waited almost three years to do so, in violation of the statutes. *James*, 154 Wn.2d at 589. The parties were therefore barred from challenging the legality of the fees. *Id.*

10

In sum, the legislature can place some limits on the exercise of a superior court's original jurisdiction provided that the limitations do not have the effect of depriving the court of that constitutional jurisdiction. When statutory procedural limits are imposed, they are prerequisites to the court's exercise of its jurisdiction.

To decide whether the decree here was issued without the court having subject matter jurisdiction to enter the decree, we begin with the state constitution. Under article IV, section 6, superior courts are granted

> original jurisdiction . . . of all matters of probate, divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court.

This language specifically grants superior courts original jurisdiction in divorce matters. At the same time, it provides some flexibility to the legislature to direct which courts may have jurisdiction.

Turning to the statute, RCW 26.09.030 states that when a resident petitions for dissolution and alleges that the marriage is irretrievably broken, and when 90 days have elapsed from the filing of the petition and service of summons, the court shall enter a decree of dissolution. There is no express language stating these are jurisdictional requirements.

This court has addressed how statutes impact the court's jurisdiction over divorce actions on several occasions. *E.g.*, *Arneson v. Arneson*, 38 Wn.2d 99, 100, 227 P.2d 1016 (1951); *Palmer v. Palmer*, 42 Wn.2d 715, 716-17, 258 P.2d 475 (1953) ("[a]

11

divorce action is a statutory proceeding, and the court has no jurisdiction that cannot be inferred from a broad interpretation of the statutes"). In *Arneson*, 38 Wn.2d at 100, this court considered whether the trial court in a divorce suit acted in excess of its jurisdiction when it compelled a liquidation for the benefit of creditors. We stated that

> [d]ivorce, probate, bankruptcy, receiverships, and assignments for the benefit of creditors are statutory proceedings, and the jurisdiction and authority of the courts are prescribed by the applicable legislative enactment. In them the court does not have any power that can not be inferred from a broad interpretation *of the act in question*. The powers of the court in probate and receiverships can not be imported into the divorce act. Whether or not the court exceeded its jurisdiction, in the case at bar, must be determined from the language of the divorce act of 1949.

*Id.* We determined that the lower court had no power to compel a liquidation for the benefit of the creditors as incident to a divorce decree because no such provision was provided by the divorce act. *Id.* at 101. In other words, where no relief was contemplated by the statute, the court did not have jurisdiction to grant such relief.

This court and others have also specifically considered whether the residency requirements under RCW 26.09.030 are related to the court's jurisdiction. *In re Marriage of Ways*, 85 Wn.2d 693, 538 P.2d 1225 (1975); *In re Marriage of Robinson*, 159 Wn. App. 162, 168, 248 P.3d 532 (2010). In *Ways*, this court addressed whether a nondomiciled member of the armed forces had a sufficient nexus with the State to allow the court to have jurisdiction over the divorce proceeding. This court recognized that a nexus may exist where a sufficient time passed from the filing of the petition and the issuance of the dissolution decree and that the 90-day requirement under RCW 26.09.030 was intended for that purpose. *Ways*, 85 Wn.2d at 700. We stated that 90 days was

12

established not only to provide a "cooling off" period, but to allow the court to enter a valid decree of dissolution for otherwise nondomiciled members of the armed forces. *Id.* We determined that because the party in the case was not stationed continuously during the 90 days, the trial court did not have jurisdiction. *Id.* at 703.

The Court of Appeals similarly addressed the residency requirements in *Robinson*, 159 Wn. App. at 168. There, the Court of Appeals considered whether the trial court had subject matter jurisdiction to enter a dissolution decree where the residency requirement of RCW 26.09.030 was potentially unmet. *Id.* 166-67. The court determined that this requirement was jurisdictional and that because neither spouse had reestablished a Washington residency during the pendency of the action, the trial court lacked subject matter jurisdiction. *Id.* at 172.

This court also considered the residency requirement of an Idaho divorce statute in *Hammond v. Hammond*, 45 Wn.2d 855, 278 P.2d 387 (1955). The statute required a party to establish a domicile in Idaho for six weeks preceding the commencement of an action, under Idaho Code § 32-701. We determined that while the requirement to establish a domicile was a jurisdictional necessity for establishing a court's subject matter jurisdiction over the marital status, the duration of the residency was not and in no way limited the court's jurisdiction. *Id.* at 859. We said that the duration was "analogous to a fact necessary to establish the grounds for divorce. If there is a failure of proof of such fact, the court has no authority to enter a decree, but its jurisdiction is not affected." *Id.*

13

Collectively, these cases support the conclusion that the divorce act imposes some prerequisites to the court's exercise of jurisdiction. Specifically, the superior court is limited to granting the relief contemplated by the statute and the residency requirement must be met for the court to exercise its jurisdiction over the proceeding.

Mr. Buecking argues that the 90 day "cooling off" period is akin to the residency requirement and represents a limitation upon the court's exercise of its subject matter jurisdiction. We disagree. As discussed, while residency itself is a prerequisite to the exercise of jurisdiction, the duration of such residency is not. *Id.* Similarly, the durational requirement for entry of a decree of dissolution does not affect the court's subject matter jurisdiction, only its legal authority to enter the decree. To conclude a court has the subject matter jurisdiction to hear a case, but then can lose it based upon the timing of its decree, would conflict with the meaning of subject matter jurisdiction and our prior decisions. *Schneider*, 173 Wn.2d at 360 ("subject matter jurisdiction refers to the court's authority to entertain a type of controversy, not simply lack of authority to enter a particular order"). The court either has subject matter jurisdiction or it does not; it cannot hinge a particular order on whether the 90-day requirement was met under the statute. *Williams*, 171 Wn.2d at 730; *Posey*, 174 Wn.2d at 139. While we recognize that courts are obligated to follow statutory requirements, the failure to comply with the 90 day "cooling off" period is only a legal error, not a prerequisite for the court's exercise of jurisdiction.

Our decision is in keeping with decisions in other contexts where we have held durational requirements do not affect a court's subject matter jurisdiction. For example, in *State v. Moen*, 129 Wn.2d 535, 919 P.2d 69 (1996), we held that a court has subject matter jurisdiction where the court has authority to hear the type of controversy and that an erroneous interpretation of the law does not divest it of that jurisdiction. *Id.* at 545 (citing *Marley*, 125 Wn.2d at 539). There, we determined that because the trial court had authority to impose restitution, its violation of a statutory 60-day time limit was not a jurisdictional defect. *Id.*

Similarly, in *Little*, we considered whether a decree of dissolution was void where various ancillary matters were not ruled upon at the time the decree was entered. 96 Wn.2d at 197. As an analogy, we discussed several cases that had addressed a constitutional requirement that the superior court render its decision within three months after the matter was submitted, under article IV, section 20. *Id.* at 196 (citing *Phillips v. Phillips*, 52 Wn.2d 879, 329 P.2d 833 (1958) and quoting *In re Cress*, 13 Wn.2d 7, 11, 123 P.2d 767 (1942) for the precept that "[n]othing in the constitutional provision requiring a decision within ninety days forbids a decision at any other time or lessens the jurisdiction of the judge of the superior court"). We stated that if a constitutional provision requiring a decision within a specified time does not invalidate a decision rendered later, then a statute requiring a decision at a specified time does not do so either. *Id.*

Other examples demonstrate procedural limitations imposed by the legislature that do not affect the court's jurisdiction. For example, we determined that RCW 4.12.020(3), a statute limiting the county in which a plaintiff could bring a motor vehicle suit, was a limitation on the court's subject matter jurisdiction. *Young v. Clark*, 149 Wn.2d 130, 65 P.3d 1192 (2003). We had previously interpreted the statute to dictate which courts have original subject matter jurisdiction over actions governed by the statute. *Id.* at 133. In a footnote, we also noted that other courts had construed such statutes as limiting subject matter jurisdiction. *Id.* at 134 n.5. However, validity of these constructions had not been determined in light of article IV, section 6. *Id.* When we reconsidered the issue under the constitutional mandate and our obligation to construe statutes consistently with the constitution, we concluded that our previous interpretation violated the constitution. *Id.* at 134. We held that the statute's limitations relate only to venue, not to the court's subject matter jurisdiction. *Id.*

Accordingly, we hold that the 90-day "cooling off" requirement under RCW 26.09.030 is not a jurisdictional limitation upon the court. Passage of the statute's 90-day period is not a necessary component of the superior court's subject matter jurisdiction. The 90-day requirement is a permissible procedural limitation upon the court's exercise of its jurisdiction. If the court's entry of a dissolution decree occurs before the 90-day period elapses, the court is not thereby stripped of its subject matter jurisdiction.[5]

---

[5] The New York Court of Appeals has noted that the "clear distinction between a court's competence to entertain an action," its subject matter jurisdiction, and "its power to render a judgment on the merits" and stated that "[a]bsence of competence to entertain an action deprives

Here, the trial court's issuance of the dissolution decree before 90 days had elapsed was a legal error which did not affect its jurisdiction. Because Mr. Buecking failed to raise this error at trial, we deny him relief. RAP 2.5 (allowing an appellate court to refuse to review a claim that was not raised in the trial court, except where the error alleges a lack of trial court jurisdiction, failure to establish facts upon which relief can be granted, or a manifest error affecting a constitutional right); *State v. Robinson*, 171 Wn.2d 292, 304, 253 P.3d 84 (2011) ("[t]he general rule in Washington is that a party's failure to raise an issue at trial waives the issue on appeal unless the party can show the presence of a 'manifest error affecting a constitutional right'" (internal quotation marks omitted) (quoting *State v. Kirwin*, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009))).[6,7]

### 3. Attorney fees

The Court of Appeals awarded Ms. Westman attorney fees on appeal under RCW 26.09.140, subject to her compliance with RAP 18.1. RAP 18.1(c) requires a financial affidavit to be filed no later than 10 days before the date the case is set for oral argument or consideration. Westman filed her affidavit following the court's decision. Subsequently, Mr. Buecking filed a motion for reconsideration and argued that Westman

---

the court of 'subject matter jurisdiction'; absence of power to reach the merits does not." *Lacks v. Lacks*, 41 N.Y.2d 71, 75, 359 N.E.2d 384, 390 N.Y.S.2d 875 (1976).

[6] In Buecking's supplemental brief, he alleges that the court lacked subject matter jurisdiction to hold the trial before the 90-day time period had elapsed. Because Buecking did not raise this issue in his petition for review, we decline to address it. RAP 13.7(b).

[7] In accord with the rules that govern review of claimed legal errors, we decline to consider the legal error in this case. Exceptions to these rules may, in different circumstances, warrant consideration of errors such as the one that occurred here.

failed to comply with RAP 18.1. The court denied the motion and waived the requirements of RAP 18.1(c) to serve the ends of justice under RAP 1.2(c).

The Court of Appeals did not abuse its discretion in awarding Ms. Westman attorney fees. As she argues, Buecking's appeal "raises an interesting jurisdictional question, but serves no purpose for the parties." Suppl. Br. of Resp't at 15. Even if Mr. Buecking were successful in his appeal, 90 days have now since elapsed from the filing of the dissolution petition and it is a virtual certainty that a new decree would simply be entered. Further, Westman notes that the appeal has delayed payments from Buecking to Westman and their children and that the award is appropriate given the disparity in income. We find no abuse of the Court of Appeals' discretion in awarding attorney fees, despite the belated compliance with RAP 18.1(c). We similarly award Ms. Westman attorney fees on discretionary review by this court.

## CONCLUSION

We hold that the 90-day period under RCW 26.09.030 commences with the date that the petition for dissolution of marriage is filed and not from the date a petition for legal separation is filed. We affirm the Court of Appeals' holding that the-90 day cooling off period does not affect the superior court's subject matter jurisdiction but instead is a permissible legislatively imposed limitation on jurisdiction. We also award Ms. Westman attorney fees in this court and affirm the Court of Appeals' award of attorney fees.

No. 87680-1

_Madsen, C.J._

WE CONCUR:

_Johnson, J._                    _Stephens, J._

_Owens, J._                      _Wiggins, J._

_Fairhurst, J._                  _González, J._

_J.M. Johnson, J._               _Gerry McCloud, J._

19