# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| In re the Matter of the Marriage of: | No.  51848-1-II |
| JESSICA HOWARD, | |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| NGOMA MOSES HOWARD, | |
| Appellant. | |

GLASGOW, J. — Ngoma Moses Howard and Jessica Howard were married in March 2006 and have two children together.  Jessica[1] filed a petition to dissolve the marriage in June 2017. After participating in mediation, Ngoma and Jessica entered into a CR 2A agreement to fully resolve any issues in their marriage dissolution.  Jessica later filed a motion in the superior court to enforce the CR 2A agreement and to enter a final dissolution decree.  The trial court entered a final decree, parenting plan, and child support order that were consistent with the parties' CR 2A agreement.

---

[1] We refer to the parties by their first names for clarity.

Ngoma appeals from the final decree, contending that the trial court lacked jurisdiction to enter the final decree and the trial court lacked authority to enter a child support order because when he married Jessica, he did not agree to undertake the burden of child support. He also contends that the trial court erred in enforcing the spousal support provision of the CR 2A agreement because it provided Jessica with greater total monthly income than it did to him, and the trial court erred in enforcing the CR 2A agreement because it was a product of fraud and duress. Ngoma also raises a number of other arguments challenging the final decree that lack sufficient development to warrant judicial review. We affirm the final dissolution decree.

FACTS

Ngoma and Jessica married in March 2006 and separated in April 2017. They had two children together. On June 13, 2017, Jessica filed a petition to dissolve the marriage and a proposed parenting plan. Ngoma, through counsel, accepted service of the dissolution petition and the proposed parenting plan.

Ngoma filed a response to the dissolution petition, which disputed only Jessica's request for spousal support and for attorney fees and costs, asserting that Jessica had "the ability to support herself." Clerk's Papers (CP) at 40, 55. Ngoma agreed that the superior court had jurisdiction over the parties' marriage and had personal jurisdiction over himself because he lives in Washington. Ngoma also agreed to the date of the parties' marriage, the date of separation, and identification of the children of the marriage. Ngoma's response requested that the court approve Jessica's proposed parenting plan, approve a child support order consistent with Washington's child support schedule, and equitably divide the parties' property and debts.

After participating in mediation where Ngoma and Jessica were both represented by counsel, the parties entered into a CR 2A agreement. The agreement provided in part that Ngoma

2

would pay Jessica spousal support in the amount of $750 per month for 48 months and that he would pay Jessica $3,500 for attorney fees and to offset personal items left in the family home. The CR 2A agreement stated: "The parties intend this to be a binding agreement and a full and final resolution of all issues in their dissolution case." CP at 60.

Jessica filed a motion in the superior court to enforce the CR 2A agreement and to enter a final order of dissolution. The superior court conducted a hearing on the motion, and Ngoma appeared and represented himself. At the hearing, Ngoma appeared to contest the court's jurisdiction over the matter and made a motion to continue the hearing "to mount a credible defense to contest the CR 2[A] agreement, the marriage contract, and the child support order." Verbatim Report of Proceedings (Apr. 13, 2018) at 7. Ngoma filed a written continuance motion that same day.

The trial court concluded that it had jurisdiction over the matter and denied the motion for continuance. The trial court found that Jessica's proposed final dissolution order, parenting plan, and child support order were consistent with the parties' CR 2A agreement, and it entered the orders that same day. Ngoma appeals from the final dissolution order.

ANALYSIS

I. JURISDICTIONAL CLAIMS

Ngoma contends that the trial court lacked jurisdiction to enter the final dissolution decree and related orders. We disagree. The trial court had both subject matter jurisdiction to adjudicate the marriage dissolution and personal jurisdiction over the parties.

In Washington, jurisdiction is comprised of two components: subject matter jurisdiction and personal jurisdiction. *Buecking v. Buecking*, 179 Wn.2d 438, 447, 316 P.3d 999 (2013). "Subject matter jurisdiction refers to a court's ability to entertain a type of case, not to its authority

to enter an order in a particular case." *Id.* at 448. Therefore, "if a court can hear a particular class of case, then it has subject matter jurisdiction." *Id.* We review issues of subject matter jurisdiction de novo. *Id.* at 443.

Under article IV, section 6 of the Washington Constitution, superior courts have original jurisdiction in all cases involving dissolution or annulment of marriage. *Buecking*, 179 Wn.2d at 447-48. The Washington legislature has imposed certain prerequisites necessary to properly invoke that jurisdiction, including that at least one party must be a resident of Washington or a member of the armed forces stationed in this state, and at least one party must allege that the marriage is irretrievably broken. RCW 26.09.030;[2] *Buecking*, 179 Wn.2d at 448.

Here, there is no dispute that both Ngoma and Jessica were residents of Washington during the dissolution proceedings. Jessica's dissolution petition asserted that both she and Ngoma lived in Pierce County, and Ngoma's response agreed with Jessica's statement of the parties' residency. In addition both parties claimed that the marriage was irretrievable broken. The parties properly invoked the subject matter jurisdiction of the superior court under article IV, section 6 and RCW 26.09.030.

To the extent that Ngoma is claiming that the superior court lacked personal jurisdiction, his claim has been waived. Unlike subject matter jurisdiction, a party may waive a claim that a tribunal lacked personal jurisdiction over them. *Nw. Cascade, Inc. v. Unique Constr., Inc.*, 187 Wn. App. 685, 694, 351 P.3d 172 (2015). Here, Ngoma admitted that the superior court had personal jurisdiction over him in his response to the dissolution petition, a document that both

---

[2] The legislature amended RCW 26.09.030 in 2019. Because the relevant language has not changed, we cite to the current version of this statute.

Ngoma and his attorney signed. Accordingly, he has waived any claim that the superior court lacked personal jurisdiction over him.

Ngoma appears to argue that the superior court lacked jurisdiction in this matter because, he says, it was acting in an administrative capacity rather than in a judicial capacity. In support of this argument, Ngoma presents quotes from federal and out-of-state cases that are inapplicable to the issue of whether the superior court had authority to enter the final dissolution decree in this matter. And Ngoma fails to present any reasoned argument supporting his conclusory claim that the superior court lacked authority to enter a final dissolution order because it was not acting in a judicial capacity. Because, such "[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration," we do not further consider it. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998); *see also In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993) (Unrepresented litigants are held to the same standard as attorneys.). In short, the superior court had subject matter and personal jurisdiction to enter the final dissolution decree.

## II. CHILD SUPPORT

Next, Ngoma appears to contend for the first time on appeal that the trial court erred in entering the child support order because he did not agree to undertake a child support obligation when he married Jessica. First, Ngoma did not include the child support order in his notice of appeal, so that order has not been properly appealed. *See* RAP 2.4. Second, we generally do not review issues raised for the first time on appeal unless the party claims a lack of trial court jurisdiction, a failure to establish facts upon which relief can be granted, or a manifest error affecting a constitutional right. RAP 2.5(a); *see also Buecking*, 179 Wn.2d at 446. Ngoma does

not argue that any of the exceptions of RAP 2.5(a) apply. Accordingly, we decline to address this argument on appeal.

### III. SPOUSAL/CHILD SUPPORT

Next, Ngoma appears to argue that the trial court erred by entering a dissolution decree that granted Jessica a higher monthly income when accounting for the award of spousal and child support. We disagree.

Here, the trial court's final dissolution decree was consistent with the parties' CR 2A agreement. Ngoma does not argue to the contrary, instead asserting that the inequitable distribution of assets amounts to fraud. This assertion lacks merit.

A stipulated settlement agreement is a contract between parties, and we consider it under the common law of contracts. *Condon v. Condon*, 177 Wn.2d 150, 162, 298 P.3d 86 (2013). When both parties assent to an agreement and present evidence of a writing that is signed by both parties, the trial court will enforce the agreement. CR 2A. "The purpose of CR 2A is to give certainty and finality to settlements." *Condon*, 177 Wn.2d at 157. "'[T]he party moving to enforce a settlement agreement carries the burden of proving that there is no genuine dispute over the existence and material terms of the agreement.'" *Id.* at 162 (quoting *Brinkerhoff v. Campbell*, 99 Wn. App. 692, 696-97, 994 P.2d 911 (2000)).

Here, Jessica presented to the trial court a CR 2A agreement that was signed by both parties and the parties' attorneys. The CR 2A agreement stated that the parties intended the agreement to be a binding "final resolution of all issues in their dissolution case." The terms of the CR 2A agreement provided that Ngoma would pay Jessica spousal support in the amount of $750 per month for 48 months and that child support would be determined based on the parties' respective incomes. At the hearing addressing Jessica's motion to enforce the CR 2A agreement, Ngoma did

not dispute the agreement's existence or its material terms. And Ngoma does not argue on appeal that the trial court deviated from the parties' CR 2A agreement. Accordingly, Ngoma fails to demonstrate that the trial court erred by enforcing the agreement.

Ngoma also appears to contend that the trial court lacked authority to award spousal support based on language in the Social Security Act. But Ngoma fails to explain how the Social Security Act relates to the trial court's authority to enter its final dissolution decree incorporating the parties' CR 2A agreement. Because Ngoma does not present reasoned argument supporting this contention, we decline to address it. *Holland*, 90 Wn. App. at 538.

## IV. FRAUD/DURESS

Next, Ngoma argues that the trial court erred in enforcing the CR 2A agreement because he was under duress when he entered into the agreement. Specifically, Ngoma appears to argue that the CR 2A agreement is voidable because he suffers from post-traumatic stress disorder caused by domestic violence that he alleges Jessica committed against him. We reject this argument because Ngoma fails to support his allegations with any supporting evidence in the record.

## V. REMAINING CLAIMS

Ngoma appears to raise a number of other arguments that we do not address because they are difficult to discern and lack sufficient development to warrant judicial review.[3] Accordingly, we affirm the trial court's final dissolution decree and associated orders.

---

[3] For example, Ngoma devotes several portions of his brief quoting sections of the Social Security Act without explaining how the Act relates to this matter, quotes without explanation the text of CR 60, and quotes without explanation several federal and out-of-state cases.

### VI. ATTORNEY FEES

Jessica requests attorney fees and costs on appeal under RAP 18.1 and RCW 26.09.140. But she did not submit the required declaration. As a result, we decline her request for attorney fees and costs on appeal.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, C.J.

Melnick, J.