IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DOUGLAS VERDIER, a single man, | ) | No. 38543-4-III |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY BOST and LAURI BOST, | ) | UNPUBLISHED OPINION |
| husband and wife and their marital | ) | |
| community, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| TODD VERDIER, a single man, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Todd Verdier appeals a superior court order granting a motion to enforce a CR 2A settlement agreement. He also claims the right to appeal a 2018 bench trial ruling resolving a boundary line and water dispute between his father, Douglas Verdier, and Gregory and Lauri Bost. We affirm.

FACTS

Douglas Verdier owned property in Clark County, Washington, adjacent to property owned by Gregory and Lauri Bost. Douglas,[1] who resided there with his son Todd, had a well on his property that supplied both the Verdier and Bost households with water. As a result of dispute between the neighbors concerning the property line and the Bosts' use of the well, Douglas filed suit in early 2013 to quiet title and for other damages and declaratory relief. The Bosts' answered Douglas's complaint and asserted counterclaims against Douglas and Todd. The counterclaims included allegations of both negligent and intentional infliction of emotional distress. In September 2014, the Bosts were successful in obtaining an injunction against Todd and Douglas to prevent them from interfering with the Bosts use of the well.

A bench trial on Douglas's claims was held in September 2018. While the court ruled in Douglas's favor on the boundary line dispute, it ruled in favor of the Bosts on the water dispute, explaining that "[e]ach of the parties has the right to an uninterrupted supply of water from the well located on [Douglas]'s property." Clerk's Papers (CP) at 73. The court's ruling identifies Douglas as the plaintiff, the Bosts as defendants and

---

[1] For clarity and readability, we refer to the Verdiers by their first names.

2

counterclaim plaintiffs, and Todd as a counterclaim defendant. The ruling did not resolve

the Bosts' counterclaims.

On May 2, 2019, Douglas's attorney, Lowell McKelvey, sent an e-mail proposing

a settlement of the Bosts' counterclaims. One term of the settlement was the "[m]utual

[r]elease of all claims between both Verdiers and Bosts, past to present." Ex. D1-4.

Todd's attorney, Levi Bendele, e-mailed the proposed terms to Todd, indicating: "Looks

like everyone is ready to settle. It requires a mutual release of all parties past to present.

. . . You in or out?" Ex. D2-105. Later that evening, Mr. Bendele e-mailed Todd again:

> Thank you for getting back to me. Confirming that you accept the
> settlement terms below. And confirming the release will be mutual and for
> all potential claims accrued past to today's date. We'll try to get the case
> settled now with your authority.

*Id*. Todd e-mailed back:

> Ok . . . Levi[.]
> Per our conversation. I give my release for past up to the present . . .
> mutually. In the Verdier v[.] Bost matter filed in 2013. If this settles for the
> 110k plus whatever C. Doug Verdier's other conditions are.

*Id*.

On May 3, the parties appeared before the trial court to notify the court they had

reached a settlement. Attorney John Barton[2] appeared on Todd's behalf as Mr. Bendele

---

[2] Mr. Barton was co-counsel with Mr. Bendele.

was out of town. Mr. McKelvey read the terms of the agreed settlement to the court, including "There will be a mutual release of all claims between both Verdiers, Todd and Doug, and the Bosts past to present, not future." Report of Proceedings (RP) (May 3, 2019) at 5. Mr. Barton informed the court that Todd agreed to the terms of the settlement. The settlement terms had not yet been reduced to a formal written agreement at the time of the hearing.

In June, Douglas filed a motion to enforce the terms of the settlement read into the record on May 3. After the Bosts responded to the motion, Todd also filed a response, stating he had "concerns regarding the Bosts['] attempts to change and add terms that were never mentioned in the settlement agreement read into the court record on May 3, 2019." CP at 114. Todd argued that "[t]he terms read into the records on May 3, 2019 are clear and should be enforced as stated." *Id.* at 117. Todd's response specifically listed the mutual release of all claims between the Verdiers and the Bosts as a term read into the record. The trial court granted the motion.

By September, the settlement agreement had still yet to be reduced to writing. Consequently, the Bosts filed their own motion to enforce the settlement, arguing the Verdiers had unreasonably delayed the formalization of a written agreement. Todd opposed this motion, asserting that he had not authorized his attorneys to enter into a

settlement with the Bosts wherein he would give up the right to assert claims against them in the future.

At a hearing in November, Mr. Bendele requested to withdraw from representing Todd due to a conflict. Todd also personally asked for a continuance to resolve issues surrounding his legal representation. Later in the hearing, Mr. McKelvey discussed Douglas's response to the Bosts' motion to enforce the settlement. Mr. McKelvey explained he drafted and attached to Douglas's response a written version of the draft settlement agreement read into the record on May 3, which Douglas had signed as a demonstration of his willingness to settle. Mr. McKelvey described this draft as follows:

> [I]t's a settlement agreement where I took the May 3rd email that formed the settlement basis for this settlement—that was poorly worded—but the May 3rd email that is the basis for the settlement agreement which I then read almost verbatim—in retrospect I wish I had read it verbatim—into the record before Your Honor.

RP (Nov. 15, 2019) at 13. The court granted Todd a continuance and scheduled another hearing on the Bosts' motion for December 6.

At the December hearing, Todd argued the trial court needed to hold an evidentiary hearing to resolve issues of fact concerning whether he had authorized his counsel to release his potential claims against the Bosts. The court concurred and scheduled a hearing to receive evidence on the issue.

5

The evidentiary hearing was held on January 10, 2020. At the outset of the hearing, Todd conceded that there was "no dispute" that he had "agreed to a mutual release of claims." RP (Jan 10, 2020) at 6. Todd explained the only thing to be decided by the court was the "very narrow issue" of whether Mr. Bendele had the authority to settle Todd's federal law claims[3] against the Bosts. *Id*. 6-7.

During the hearing, Todd produced a letter of engagement from Mr. Bendele and Mr. Barton which stated they were retained only to defend claims made against Todd, and were not authorized to represent him in making claims of his own. Mr. Bendele explained the Bosts requested a release of all potential claims against them as a condition of settlement of their claims against Todd. In support of this contention, he produced the e-mails between himself, Mr. McKelvey, the Bosts' attorney, and Todd. Mr. Bendele also claimed he repeatedly discussed with Todd the necessity of releasing all claims Todd had against the Bosts to settle the Bosts' claims against Todd. Mr. Bendele testified Todd released all his claims of any kind against the Bosts. Mr. Bendele denied that Todd instructed him to reserve potential federal law claims against the Bosts.

---

[3] Todd was considering suing the Bosts under the Clean Water Act, 33 U.S.C. §1365, and the Trafficking Victims Protection Act, 18 U.S.C. §1595.

6

Todd testified at the hearing that he had given Mr. Bendele permission to release "the Verdier v[.] Bost matter state [law] claims that they filed against me in 2013." *Id.* at 73. He denied providing Mr. Bendele permission to settle his federal law claims.

The trial court found Mr. Bendele's testimony to be persuasive and consistent with the documents admitted. The court found Mr. Bendele to have been very clear with Todd about the nature of the claims he was releasing. Conversely, the court found Todd's testimony about withholding his federal law claims to not be credible. The court concluded Mr. Bendele did not exceed his authority by entering into the settlement agreement.

On February 4, 2020, the trial court granted the Bosts' motion to enforce the settlement. The court's order specified that the draft of the written settlement agreement proposed by Douglas in his response to the motion constituted the written agreement among the parties.

Todd now appeals both the September 2018 bench trial ruling and the order enforcing the settlement agreement. A Division Three panel considered Todd's appeal with oral argument after receipt of an administrative transfer of the case from Division Two.

ANALYSIS

Todd challenges the trial court's order enforcing the settlement agreement. He also challenges the trial court's bench trial ruling regarding the right to well water. We address each issue in turn.

*Enforcement of settlement agreement*

During the trial court proceedings, the only issue before the court was the authority of Mr. Barton and Mr. Bendele to enter into a settlement agreement, releasing Todd's potential federal law claims against the Bosts. Todd did not raise any legal arguments regarding the validity of the CR 2A settlement. After hearing the testimony and considering the matter, the trial court ruled Todd's attorneys had authority to enter into the settlement agreement. This ruling was based on a credibility assessment. The trial court credited Mr. Bendele's testimony that Todd had agreed to settle all claims in any shape or form. The court did not credit Todd's testimony to the contrary. We lack authority to revisit a trial court's credibility assessment on appeal. *State v. N.B.*, 7 Wn. App. 2d 831, 837, 436 P.3d 358 (2019). Todd therefore fails to show the trial court erred in its decision to uphold the settlement agreement.

For the first time on appeal, Todd makes several legal arguments regarding the propriety of the CR 2A settlement agreement. As pointed out by the Bosts, arguments

raised for the first time on appeal are generally deemed waived. *See* RAP 2.5(a). While we have discretion to address unpreserved issues under RAP 2.5(a), we decline to exercise that discretion in this case.

*Subject matter jurisdiction*

Todd argues he has made a subject matter jurisdiction claim that is reviewable for the first time on appeal. Under RAP 2.5(a), a litigant is entitled to raise a claim of lack of subject matter jurisdiction at any time, regardless of whether the claim was preserved at trial. We therefore assess whether Todd has a viable subject matter jurisdiction argument.

"Subject matter jurisdiction refers to a court's ability to entertain a type of case, not to its authority to enter an order in a particular case." *In re Marriage of Buecking*, 179 Wn.2d 438, 448, 316 P.3d 999 (2013). Superior courts have jurisdiction "in all cases . . . in which jurisdiction shall not have been by law vested exclusively in some other court. . . ." WASH. CONST. art. IV, § 6. "As courts of general jurisdiction, superior courts have long had the 'power to hear and determine all matters, legal and equitable . . . except in so far as these powers have been expressly denied.'" *In re Marriage of Major*, 71 Wn. App. 531, 533, 859 P.2d 1262 (1993) (quoting *State ex rel. Martin v. Superior Court*, 101 Wash. 81, 94, 172 P. 257 (1918)).

In general, "state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by [the United States] Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication." *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477-78, 101 S. Ct. 2870, 69 L. Ed. 2d 784 (1981). Congress has provided that citizen suits under the Clean Water Act, 33 U.S.C. § 1365, be filed in United States District Court. Likewise, private suits under the Trafficking Victims Protection Act (TVPA), 18 U.S.C. § 1595, must also be field in federal district court.

While the trial court lacked the subject matter jurisdiction to hear a claim under the Clean Water Act or the TVPA, the court never entertained such a claim. Instead, the court merely issued an order enforcing a settlement agreement that waived Todd's claims against the Bosts. As a court of general jurisdiction, the trial court had the subject matter jurisdiction to enforce the settlement agreement. Todd cites no law to the contrary or any law that states Washington superior courts lack the jurisdiction to enforce agreements waiving federal law claims. We therefore affirm the trial court's order enforcing the CR 2A settlement agreement.

No. 38543-4-III
*Verdier v. Bost*

*Water ruling*

Todd challenges the trial court's September 2018 bench trial ruling, arguing it created an illegal public water system. The Bosts answer that Todd lacks the standing to appeal this ruling, as Todd lacks a legal interest in any of the property at issue in the water ruling. We agree with the Bosts.[4]

"Only an aggrieved party may seek review by the appellate court." RAP 3.1. For a party to be aggrieved, the decision in question must adversely affect that party's property or pecuniary rights, or a personal right, or impose on the party a burden or obligation. *Sheets v. Benevolent & Protective Order of Keglers*, 34 Wn.2d 851, 855, 210 P.2d 690 (1949). "[U]nder some narrow circumstances, persons who were not formal parties to trial court proceedings, but who are aggrieved by orders entered in the course of those proceedings, may appeal as 'aggrieved parties.'" *State v. G.A.H.*, 133 Wn. App. 567, 574, 137 P.3d 66 (2006). For example, a mother was allowed to appeal a filiation order following proceedings brought in the name of the State, as she had a direct pecuniary interest that was adversely affected by the order. *State v. Casey*, 7 Wn. App. 923, 927, 503 P.2d 1123 (1972).

---

[4] As the Bosts also note, Todd's appeal of the water ruling is not timely.

11

Todd was not an aggrieved party for purposes of the 2018 bench trial ruling. The only claims litigated at the bench trial were Douglas's claims against the Bosts. Todd was not a party to these claims. Furthermore, he did not have a property, personal, or pecuniary right that was adversely affected by the court's ruling. Todd did not own his father's property at the time of the bench trial. He had no property or pecuniary right to the well, and the order directing Douglas to allow the Bosts to have an uninterrupted supply of water imposed no burden or obligation upon Todd. Therefore, Todd was not an aggrieved party who has the ability to appeal the court's bench trial ruling. We will not review this claim of error.

*Motion to supplement record*

On March 7, 2022, Todd filed a motion to supplement the record with a declaration from an attorney for the Bosts named Jennie Bricker. The motion references numerous exhibits documenting settlement negotiations between the Bosts and the Verdiers. Todd's motion includes a copy of Ms. Bricker's declaration. However, the motion does not include the vast majority of the exhibits purportedly appended to the declaration. Todd filed his motion three days before oral argument in this case. The Bosts argue the motion to supplement the record should be denied as untimely.

No. 38543-4-III
*Verdier v. Bost*


We agree with the Bosts that the motion to supplement the record is untimely and is therefore denied. It is not apparent how Ms. Bricker's declaration is relevant to the credibility assessment that was at issue during the evidentiary hearing on whether to enforce the parties' settlement agreement. Supplementing the record at this point would be unfair to the Bosts as it would delay the proceedings and require additional briefing. The ends of justice would not be served by supplementing the record.

## CONCLUSION

The superior court is affirmed. The motion to supplement the record is denied.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:


_____
Siddoway, C.J.


_____
Lawrence-Berrey, J.

13