[No. 11927.  Department One.  March 31, 1915.]

IRL T. REPLOGLE, *Respondent*, v. SEATTLE SCHOOL DISTRICT
No. 1, *Appellant*.[1]

MASTER AND SERVANT—INJURIES TO SERVANT—WORKMEN'S COMPEN-
SATION ACT—CIVIL ACTION.  A person whose usual or regular em-
ployment, that of a truck driver and storekeeper's helper, was not
extra-hazardous, but whose duty it was when called upon, to assist
and work under the direction of an electrician in the installation of
electric motors, classed as an extra-hazardous employment in the
workmen's compensation act (3 Rem. & Bal. Code, § 6604-4), is sub-
ject to the provisions of that act, while engaged in such extra-hazard-
ous work; and hence cannot maintain an action for personal injuries,
against his employer who had fully complied with the act, in view
of Id., § 6604-1, withdrawing all phases of the subject from private
controversy, and abolishing all civil causes of action for personal
injuries sustained in extra-hazardous employment, where the em-
ployer had complied with the act.

Appeal from a judgment of the superior court for King
county, Mackintosh, J., entered September 10, 1913, upon
the verdict of a jury rendered in favor of the plaintiff, in an
action for personal injuries sustained by an employee as-
sisting in installing an electric motor.  Reversed.

*Henry W. Pennock*, for appellant.

*Vanderveer & Cummings* and *H. McC. Billingsley*, for re-
spondent.

CROW, J.—Action by Irl T. Replogle against Seattle
School District No. 1, for damages for personal injuries, and
for services rendered.  From a judgment in plaintiff's favor,
the defendant has appealed.

There are two causes of action.  Appellant concedes, how-
ever, that respondent is entitled to recover $43.20, the
amount claimed on the second cause of action for services
rendered, and it need not be further considered.

The question involved on this appeal affects the first cause
of action only.  The complaint, in substance, alleges, that

[1]Reported in 147 Pac. 196.

appellant is a duly organized school district; that on December 27, 1911, respondent was in its employ as a truck driver and storekeeper's helper, working under the direction and control of one J. M. Moseley; that in the due and regular course of his employment, Moseley directed respondent to accompany appellant's electrician, one Osborn, to a certain school building in the district, and there, under Osborn's direction, assist him in repairing one of appellant's electric motors; that while holding a lantern under the direction of Osborn, the latter negligently and carelessly caused the motor to revolve rapidly ·before a protecting sleeve had been placed in position; that thereby a clutch pully was caused to break, and that a portion of it struck and injured respondent.

Answering this cause of action, appellant, for an affirmative defense, with other facts, alleged that respondent's usual occupation as truck driver and storekeeper's helper was not at the time, and is not now, classed as extra-hazardous under the law and ruling of the industrial insurance commission of this state, but that the installation of an electric motor was and is extra-hazardous under the law and under the rulings of the commission; that shortly after October 1, 1911, appellant furnished the industrial insurance commission a complete list of all its employees, including respondent, who were engaged in manual occupations; that the commission thereafter classified appellant's employees and fixed the amount of premiums to be paid on their account; that appellant paid all premiums required by the commission, and that it was not, at the time of the accident, nor has it ever been, in default for any premium demanded by the commission.

On the trial of the action, it was, in substance, stipulated that plaintiff was employed as a truck driver and storekeeper's helper under the immediate direction and control of Moseley; that Osborn was employed and known as the electrician; that he had full charge of all electrical work for appellant, receiving orders from the chief engineer; that it

was a part of respondent's duty to deliver supplies, including electric motors, for use in the various school buildings; that it had been the custom to require respondent to assist other employees of appellant; that on several occasions respondent had assisted Osborn in the installation of electric motors in school buildings; that a ten-horse electric motor used for driving the fan in one of the buildings had become out of repair; that the electrician had taken it apart and had taken the main driving shaft, with windings and appurtenances, to a local machine shop in the city of Seattle for necessary repairs; that on December 27, 1911, respondent, in the regular course of his employment, was directed by Moseley to call at the machine shop for the parts of the motor which had been repaired, and convey the same, accompanied by Osborn, to the John B. Allen school, there to assist in assembling the parts and installing the motor under Osborn's direction and control; that, in compliance with such orders, respondent, accompanied by Osborn, delivered the parts of the motor at the school building, and there assisted Osborn in reconstructing and installing the motor, his duties being to assist in carrying the parts which had been repaired to the fan room and to hold a lantern for Osborn while he was replacing the various parts and installing the motor; that, while respondent was so engaged, Osborn, after making certain electrical connections with the motor, turned on the current, as a result of which the motor started and was caused to revolve at great speed; that a portion of the motor known as the "extension band" was at the time unprotected by the covering which should have been placed over it before turning on the current; that, as a result of the rapid revolutions, the unprotected band expanded and broke, a portion thereof striking respondent in the face and causing serious injuries, and that Osborn negligently turned on the current while the band was uncovered. The secretary of appellant's board of directors testified that, during the years 1911 and 1912, he was secretary of the board, and that the district had promptly

paid all claims that the industrial insurance commission of the state had made for premiums on workmen employed by the district, and that the district was not in default for any payments.

The question raised by the assignments of error is whether the workmen's compensation act, ch. 74, p. 345, Laws of 1911, 3 Rem. & Bal. Code, § 6604-1 *et seq.*, deprived the state courts of jurisdiction over respondent's first cause of action. Appellant contends that it did. In *Acres v. Frederick & Nelson*, 79 Wash. 402, 140 Pac. 370, this court, in an action for personal injuries prosecuted by a servant against his master, held that it was the duty of the latter to plead and prove a compliance with the industrial insurance act as a condition precedent to making the objection that the industrial insurance law had withdrawn the action from the courts. Appellant has complied with this requirement. The trial court was of the opinion that respondent's regular employment as truck driver and storekeeper's helper was not extra-hazardous, and that he was not entitled to compensation under the industrial insurance act.

It may be conceded that respondent's usual or regular employment as truck driver and storekeeper's helper was not extra-hazardous. It is not so classified in the law. But it must be remembered that respondent was an employee of appellant; that he was subject to the supervision, direction and control of Moseley; that he was required to obey, and did obey, Moseley's orders; that Moseley directed him to assist Osborn, the electrician, in the installation of the electric motor; that he did so, and that while so occupied he was subject to Osborn's orders. It is conceded that the installation of the electric motor was an extra-hazardous employment. Respondent was engaged in such employment at the time of the accident. He was not a volunteer, neither was he an interloper. It was his duty to assist in the extra-hazardous work, and the question is whether these facts and circumstances bring him within the operation of the industrial insurance

act. In § 1 of the act, 3 Rem. & Bal. Code, § 6604-1, we find
the following language:

"The state of Washington, therefore, exercising herein
its police and sovereign power, declares that all phases of
the premises are withdrawn from private controversy, and
sure and certain relief for workmen, injured in extra-hazard-
ous work, and their families and dependents is hereby pro-
vided regardless of fault and to the exclusion of every other
remedy, proceeding or compensation, except as otherwise
provided in this act; and to that end all civil actions and
civil causes of action for such personal injuries and all juris-
diction of the courts of the state over such causes are hereby
abolished, except as in this act provided."

Looking to § 4 (Id., § 6604-4) under the title "Construc-
tion Work" therein, we find that the installation of dynamos
is extra-hazardous, as is the installation of machinery not
otherwise specified.   Commenting on § 1 of the act, this
court, in *Peet v. Mills*, 76 Wash. 437, 136 Pac. 685, said:

"We can conceive of no language the legislature might
have employed that would make its purpose and intent more
ascertainable than that made use of in the first section of the
act.    To say, with appellant, that the intent of the act is
limited to the abolishment of negligence as a ground of ac-
tion against an employee only, is to overlook and read out
of the act and its declaration of principles the economic
thought sought to be crystallized into law—that the industry
itself was the primal cause of the injury and, as such, should
be made to bear its burdens.    The employer and employee
as distinctive producing causes are lost sight of in the greater
vision that the industry itself is the great producing cause,
and that the cost of an injury suffered in any industry is
just as much a part of the cost of production as the tools,
machinery, or material that enter into that production, rec-
ognizing no distinction between the injury and destruction
of machinery and the injury and destruction of men in so far
as each is a proper charge against the cost of production.
The legislature in this act was dealing, not so much with
causes of action and remedies, as with this great economic
principle that has obtained recognition in these later years,
and it sought, in the use of language it deemed apt, to em-

body this principle into law. That in so doing the legislative mind was intent upon the abolishment of all causes of action that may have theretofore existed, irrespective of the persons in favor of whom or against whom such right might have existed, is equally clear from the language of § '5 of the act, containing a schedule of awards, and providing that each workman injured in the course of his employment should receive certain compensation, and 'such payment shall be in lieu of any and all rights of action whatsoever against any person whomsoever.' . . . For these reasons, we are of the opinion that the compensation provided by the act in case of injury to any workman in any hazardous occupation was intended to be exclusive of every other remedy, and that all causes of action theretofore existing except as they are saved by the provisos of the act are done away with."

It would seem that the doctrine thus announced is controlling in this action. Had the respondent voluntarily assisted the electrician in the installation of the motor, or had his act in rendering such assistance been without the scope of his usual employment, a different question would be presented. But it is apparent that, at the time of his injury, he was properly and lawfully engaged in extra-hazardous employment in obedience to commands and orders issued to him by those who were in lawful authority over him, and that it was his duty to be employed as he was then employed. This being the fact, it is apparent that, under the policy of the entire act, any claim he has for injuries by reason of the accident which occurred when he was engaged in such extra-hazardous employment, has been withdrawn from the jurisdiction of the courts and comes within the industrial insurance act.

Section 8 (Id., § 6604-8) of the act provides that, if any employer shall default in any payment to the accident fund, he shall not, if the default be after demand for payment, be entitled to the benefits of the act, but shall be liable to suit by the injured workman as he would have been prior to the passage of the act. The section further provides, that, in case the recovery actually collected in such a suit shall be

less than compensation would be under the act, the accident fund shall contribute the amount of the deficiency; that the person so entitled under the provisions of this act shall have the choice of proceeding by suit or taking under the act, but that, if he shall take under the act, his cause of action against the employer shall be assigned to the state for the benefit of the accident fund. This section, construed with § 1 and other portions of the act, clearly indicates the legislative intention that all claims for compensation for injuries incurred by employees in extra-hazardous work shall be withdrawn from the jurisdiction of the courts, with the exception that any employer, who after demand may be in default for payments to the accident fund, shall, at the election of the injured employee, be liable to an action for damages. Appellant was at no time in default, and respondent had no option to proceed against appellant. His only remedy was under the act. It therefore is apparent that the judgment will have to be reversed. In view, however, of the fact that the appellant concedes the sum of $43.20 is due the respondent for services rendered, the action will not be dismissed, but the cause will be remanded with instructions to enter judgment in respondent's favor for $43.20, with interest from January 20, 1912, and costs in the lower court. Appellant will recover its costs in this court.

CHADWICK, ELLIS, and MAIN, JJ., concur.