# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ETHAN BOUDREAUX, STANLEY BURTON, BRAD GUILBEAU, JIMMY OGLESBY, JR., DALTON TOMS, and JUSTIN WORTHINGTON,<br><br>Appellants,<br><br>v.<br><br>WEYERHAEUSER COMPANY,<br><br>Respondent. | DIVISION ONE<br><br>No. 78284-3-I<br><br>PUBLISHED OPINION<br><br>FILED: August 26, 2019 |

DWYER, J. — Ethan Boudreaux and five of his former co-workers (collectively Boudreaux) were exposed to formaldehyde in Weyerhaeuser's Gen-4 Flak Jacket joist coating while working for a contractor performing services for Weyerhaeuser Company in Louisiana. Boudreaux brought claims against Weyerhaeuser under the Washington product liability act (WPLA), chapter 7.72 RCW, alleging injury caused by exposure to formaldehyde as a result of the defective design, formulation, and fabrication of Weyerhaeuser's Gen-4 Flak Jacket joist coating. In response to the suit, Weyerhaeuser filed a CR 12(b)(1) motion to dismiss, asserting that it was Boudreaux's statutory employer under the Louisiana Workers' Compensation Act, LA. STAT. ANN. § 23:1032, that Boudreaux's claims could only be brought before Louisiana's Office of Workers' Compensation Administration, and that the King County Superior Court

accordingly lacked subject matter jurisdiction over Boudreaux's claims. The superior court agreed and dismissed Boudreaux's suit.

We hold that Weyerhaeuser's statutory employer defense pertains to whether a civil cause of action exists, rather than to whether a Washington superior court lacks subject matter jurisdiction. Because the trial court's ruling conflicts with our constitution's grant of general subject matter jurisdiction to our superior courts, we reverse.

I

Boudreaux sued Weyerhaeuser, a Washington company with its headquarters in Seattle, under the WPLA, alleging "harm caused by the fabrication, design, formula, preparation, testing, failures to warn or instruct, marketing, and labeling of Flak Jacket," and "injuries as a result of being exposed to toxic levels of formaldehyde contained in Gen 4 Flak Jacket."[1] Boudreaux was exposed to Gen-4 Flak Jacket in Louisiana as an employee of Simsboro Coating Services, LLC, a Louisiana company hired by Weyerhaeuser to provide coating services, specifically coating joists with Weyerhaeuser's Gen-4 Flak Jacket. Boudreaux alleged that he was injured by exposure to formaldehyde in Gen-4 Flak Jacket from December 2016 through June 2017.

Weyerhaeuser responded to the complaint by filing a motion to dismiss for lack of subject matter jurisdiction pursuant to CR 12(b)(1).[2] Therein, Weyerhaeuser asserted that it was Boudreaux's statutory employer under the

---

[1] Gen-4 Flak Jacket is a coating applied to joists used in construction to improve fire resistance.

[2] Weyerhaeuser also moved to stay discovery pending resolution of its motion to dismiss. This motion was granted.

2

Louisiana Workers' Compensation Act, LA. STAT. ANN. § 23:1032, that Boudreaux's claims could only be brought before Louisiana's Office of Workers' Compensation Administration, and that the superior court accordingly lacked subject matter jurisdiction over Boudreaux's claims.[3]

Following a hearing, the trial court granted Weyerhaeuser's motion to dismiss. In its brief memorandum opinion supporting the dismissal order, the trial court engaged in fact finding, determined that Weyerhaeuser was Boudreaux's statutory employer, and ruled that Washington superior courts lacked subject matter jurisdiction over Boudreaux's claims. Boudreaux appeals.

II

This case presents us with the question of whether Weyerhaeuser's asserted defense of statutory immunity pertains to the original subject matter jurisdiction of Washington's superior courts. To resolve this question, we first look to how Washington courts consider assertions of employer immunity under the substantive workers' compensation laws of Washington, as set forth in the Industrial Insurance Act (IIA), Title 51 RCW. Next, we look to the workers' compensation laws of Louisiana to determine whether any differences between Louisiana's and Washington's substantive law would prevent the application of Washington procedural law to Weyerhaeuser's assertion of employer immunity. This analysis results in a clear answer: the superior court erred by treating

---

[3] Weyerhaeuser also asserted an alternative argument that Boudreaux's claims should be dismissed under the doctrine of forum non conveniens. The trial court did not rule on this issue.

Weyerhaeuser's statutory employer immunity defense as pertaining to the subject matter jurisdiction of the superior court.

A

Our Supreme Court has noted that Washington's courts, itself included, have been "inconsistent in their understanding and application of jurisdiction." In re Marriage of Buecking, 179 Wn.2d 438, 447, 316 P.3d 999 (2013); see also O'Keefe v. Dep't of Revenue, 79 Wn.2d 633, 634, 488 P.2d 754 (1971) ("Perhaps no word is more deserving of characterization as a 'weasel word of the law' than the much used and often abused word 'jurisdiction.'"); In re Marriage of Major, 71 Wn. App. 531, 534, 859 P.2d 1262 (1993) ("The term 'subject matter jurisdiction' is often confused with a court's 'authority' to rule in a particular manner. This has led to improvident and inconsistent use of the term." (footnote omitted)). The United States Supreme Court has also observed that in circumstances in which the question of jurisdiction was "not central to the case" and therefore did "not require close analysis," courts have often "mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations." Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 161, 130 S. Ct. 1237, 176 L. Ed. 2d 18 (2010). According to the Court, such mischaracterizations lead to "'drive-by jurisdictional rulings,' which too easily can miss the 'critical difference[s]' between true jurisdictional conditions and nonjurisdictional limitations on causes of action." Reed Elsevier, 559 U.S. at 161 (alteration in original) (citation omitted) (quoting Kontrick v. Ryan, 540 U.S. 443, 456, 124 S. Ct. 906, 157 L. Ed. 2d 867 (2004)).

4

To counter this inconsistency, Washington's Supreme Court has recently "narrowed the types of errors that implicate a court's subject matter jurisdiction." Buecking, 179 Wn.2d at 448. "'Subject matter jurisdiction' refers to a court's ability to entertain a type of case, not to its authority to enter an order in a particular case." Buecking, 179 Wn.2d at 448. Thus, "[a] court has subject matter jurisdiction where it has authority 'to adjudicate the type of controversy involved in the action.'" In re Marriage of McDermott, 175 Wn. App. 467, 480-81, 307 P.3d 717 (2013) (quoting Shoop v. Kittitas County, 108 Wn. App. 388, 393, 30 P.3d 529 (2001), aff'd on other grounds, 149 Wn.2d 29, 65 P.3d 1194 (2003)). "If the type of controversy is within the subject matter jurisdiction, then all other defects or errors go to something other than subject matter jurisdiction." Cole v. Harveyland, LLC, 163 Wn. App. 199, 209, 258 P.3d 70 (2011).

The original subject matter jurisdiction of Washington's superior courts is set forth in the Washington Constitution:

> The superior court shall have original jurisdiction in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to three thousand dollars or as otherwise determined by law, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts, and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for. The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; and said court shall have the power of naturalization and to issue papers therefor.

5

CONST. art. IV, § 6.

Our Supreme Court has explained that the original subject matter jurisdiction of the superior court is comprised of both enumerated subject matter jurisdiction and residual subject matter jurisdiction. State v. Posey, 174 Wn.2d 131, 135-36, 272 P.3d 840 (2012). The enumerated original subject matter jurisdiction of the superior court includes

> all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand or the value of the property in controversy amounts to three thousand dollars or as otherwise determined by law, or a lesser sum in excess of the jurisdiction granted to justices of the peace and other inferior courts, and in all criminal cases amounting to felony, and in all cases of misdemeanor not otherwise provided for by law; of actions of forcible entry and detainer; of proceedings in insolvency; of actions to prevent or abate a nuisance; of all matters of probate, of divorce, and for annulment of marriage; and for such special cases and proceedings as are not otherwise provided for.

CONST. art. IV, § 6; see also Posey, 174 Wn.2d at 135.

In contrast to the specified categories of enumerated jurisdiction, the residual jurisdiction of the superior court broadly includes "'all cases and . . . all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court.'" Posey, 174 Wn.2d at 136 (quoting CONST. art. IV, § 6).

Enumerated and residual subject matter jurisdiction differ in both scope and in the manner in which that scope may be altered. As explained in Posey, enumerated original subject matter jurisdiction encompasses only those cases falling within one of the explicitly listed categories in the constitution, and cannot be modified or restricted by legislative enactment. 174 Wn.2d at 135-36. Residual original subject matter jurisdiction, on the other hand, includes all other

cases and proceedings, but may be restricted by legislative enactment if, and only if, such enactment vests exclusive jurisdiction over nonenumerated types of claims in some other court. Posey, 174 Wn.2d at 136; CONST. art. IV, § 6.

Both enumerated and residual subject matter jurisdiction may be modified by a constitutional amendment adopted pursuant to the amendment procedure set forth in our constitution:

> Any amendment or amendments to this Constitution may be proposed in either branch of the legislature; and if the same shall be agreed to by two-thirds of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the ayes and noes thereon, and be submitted to the qualified electors of the state for their approval, at the next general election; and if the people approve and ratify such amendment or amendments, by a majority of the electors voting thereon, the same shall become part of this Constitution.

CONST. art. XXIII, § 1.

B

We next turn to the substantive workers' compensation law of Washington, the IIA, to determine whether it places any limits on the subject matter jurisdiction of Washington's superior courts.

1

In the early years of statehood, employees could bring causes of action against their employers in superior court seeking to recover damages for workplace injuries. See e.g., Withiam v. Tenino Stone Quarry, 48 Wash. 127, 129-30, 92 P. 900 (1907); Christianson v. Pac. Bridge Co., 27 Wash. 582, 585, 68 P. 191 (1902); Richardson v. Carbon Hill Coal Co., 6 Wash. 52, 56-57, 32 P. 1012 (1893); see also Reynolds v. Day, 79 Wash. 499, 506, 140 P. 681 (1914)

("Unquestionably, before the industrial insurance act was passed, our courts would have entertained [common law tort] action[s between employees and employers.]"). It is evident from reported case law that Washington's superior courts, at the time of statehood, had subject matter jurisdiction over tort actions for personal injury brought by employees against their employers.[4]

Then, "[i]n 1911, the legislature passed the Industrial Insurance Act (IIA), Title 51 RCW, creating a no-fault system for efficiently compensating workers injured on the job. As part of that system, employers receive immunity from civil suits resulting from on-the-job injuries." Walston v. Boeing Co., 181 Wn.2d 391, 393, 334 P.3d 519 (2014) (citing RCW 51.04.010). "Washington's IIA was the product of a grand compromise in 1911. Injured workers were given a swift, no-fault compensation system for injuries on the job. Employers were given immunity from civil suits by workers." Birklid v. Boeing Co., 127 Wn.2d 853, 859, 904 P.2d 278 (1995). The IIA is intended to provide

> sure and certain relief for workers, injured in their work, and their
> families and dependents . . . regardless of questions of fault and to
> the exclusion of every other remedy, proceeding or compensation,
> except as otherwise provided in this title; and to that end all civil
> actions and civil causes of action for such personal injuries and all
> jurisdiction of the courts of the state over such causes are hereby
> abolished, except as in this title provided.

RCW 51.04.010.

---

[4] Although we herein consider claims brought pursuant to the WPLA, and not common law tort claims, the WPLA "supplant[ed] all common law claims or actions based on harm caused by a product." Macias v. Saberhagen Holdings, Inc., 175 Wn.2d 402, 409, 282 P.3d 1069 (2012). The act specifically provided that "[t]he previous existing applicable law of this state on product liability is modified only to the extent set forth in" the act. RCW 7.72.020(1). Therefore, as the WPLA did not purport to affect the subject matter jurisdiction of Washington's superior courts over product liability claims, our jurisdictional analysis is unaffected by the supplanting of prior common law claims with claims under the WPLA.

Our Supreme Court was first tasked with interpreting the IIA later that year. See State ex rel. Davis-Smith Co. v. Clausen, 65 Wash. 156, 117 P. 1101 (1911). Therein, the court considered several constitutional arguments against the IIA and concluded that the act did not violate either the state or federal constitutions. Clausen, 65 Wash. at 212. One such argument was that the statute unconstitutionally strips employers and employees of the right to a trial by jury for the "admeasurement of damages arising from injuries received by one in the employment of another." Clausen, 65 Wash. at 207. In rejecting this argument, the Supreme Court explained its view of the effect of the statute:

> The constitution does not undertake to define what shall constitute a cause of action, nor to prohibit the legislature from so doing. The right of trial by jury accorded by the constitution, as applicable to civil cases, is incident only to causes of action recognized by law. *The act here in question takes away the cause of action, on the one hand, and the ground of defense, on the other; and merges both in a statutory indemnity, fixed and certain.* . . . The right of jury trial being incidental to the right of action, to destroy the one is to leave the other nothing upon which to operate.

Clausen, 65 Wash. at 210-11 (emphasis added).

Our Supreme Court was clear: the IIA takes away a cause of action, replacing it with a statutory indemnity. No subsequent case has rejected the Clausen analysis of the effect of the IIA. Indeed, the opposite is true, as most subsequent cases explicitly reiterate the Clausen court's interpretation. See e.g., Meyer v. Burger King Corp., 144 Wn.2d 160, 164, 26 P.3d 925 (2001) (recognizing that the IIA "abolishes most civil actions arising from on-the-job injuries and replaces them with the exclusive remedy of industrial insurance benefits"); Birklid, 127 Wn.2d at 859 ("Employers were given immunity from civil

9

suits by workers."); Perry v. Beverage, 121 Wash. 652, 666, 214 P. 146 (1923) ("[A]n injured workman who is under the workmen's compensation act, and whose injury grew out of his employment, has no right of action, either against his employer or against a third person, except as provided in the act."); Stertz v. Indus. Ins. Comm'n of Wash., 91 Wash. 588, 595, 158 P. 256 (1916) ("the [IIA's] first section put an end to all civil actions appertaining to master and servant liability"), abrogated on other grounds by Birklid, 127 Wn.2d 853; State v. Mountain Timber Co., 75 Wash. 581, 583, 135 P. 645 (1913) (stating that the IIA "abolished rights of actions and defenses"), aff'd, 243 U.S. 219, 37 S. Ct. 260, 61 L. Ed. 685 (1917); Michelbrink v. Wash. State Patrol, 191 Wn. App. 414, 422, 363 P.3d 6 (2015) ("[B]ecause the legislature intended to immunize employers from civil suits for workplace injuries, the IIA established a general prohibition on all civil suits for damages arising out of workplace injuries, with only a few narrow exceptions."); Garibay v. State, 131 Wn. App. 454, 458, 128 P.3d 617 (2005) (noting that the IIA "abolishes all common law claims for relief that might arise due to an injury to an employee while acting in the scope of his employment unless a statute specifically bestows such a right").

Subsequent decisions have also generally treated assertions of employer immunity during the pretrial phase of litigation as affirmative defenses appropriately resolved on summary judgment if there are no disputed issues of material fact. See e.g., Walston, 181 Wn.2d at 399 (holding that summary judgment was appropriate when employee failed to raise question of material fact as to whether Boeing had the actual knowledge of certain injury required to

satisfy the deliberate injury provision of the IIA); Olson v. Stern, 65 Wn.2d 871, 874-75, 400 P.2d 305 (1965) (reversing the dismissal on summary judgment of claims against a co-worker because workers' compensation immunity affirmative defense was not available when co-workers injured each other away from their job sites); Buterbaugh v. Best Pie Co., 54 Wn.2d 919, 920, 339 P.2d 693 (1959) (reversing a trial court order striking the affirmative defense of employer immunity); Judy v. Hanford Envtl. Health Found., 106 Wn. App. 26, 34-35, 22 P.3d 810 (2001) (concluding that a motion for summary judgment was the appropriate procedure to determine if contractors were one statutory employer for the purposes of the IIA when there were no disputed issues of material fact).

Furthermore, our legislature also indicated, in two different sections of the IIA, that it considered the passage of the IIA to have eliminated causes of action. Indeed, such a belief is apparent upon consideration of the provision of the IIA[5] that sets forth an exception to the general rule of employer immunity from suit:

> If injury results to a worker from the deliberate intention of his or her employer to produce such injury, the worker or beneficiary of the worker shall have the privilege to take under this title *and also have cause of action against the employer as if this title had not been enacted*, for any damages in excess of compensation and benefits paid or payable under this title.

RCW 51.24.020 (emphasis added).[6]

Not only does this section set forth the legislature's view that it had eliminated causes of action through the enactment of the IIA, but it also

---

[5] We consider the context of the entire statutory scheme when analyzing the meaning of a statutory provision. AllianceOne Receivables Mgmt., Inc. v. Lewis, 180 Wn.2d 389, 393, 325 P.3d 904 (2014) (citing Williams v. Tilaye, 174 Wn.2d 57, 63, 272 P.3d 235 (2012)).

[6] There has been no meaningful change to the cause of action language since the statute's enactment in 1911. LAWS OF 1911, ch. 74, § 6.

established a new statutory cause of action.[7] This new cause of action may be brought by an employee for a workplace injury resulting from the deliberate intention of an employer to produce such injury. Delthony v. Standard Furniture Co., 119 Wash. 298, 299, 205 P. 379 (1922); RCW 51.24.020. This new cause of action is distinct from the preceding common law cause of action eliminated by the IIA because it requires that an injury result from the deliberate intention of the employer to cause such injury and limits recovery of damages to those amounts in excess of the compensation or benefits paid or payable under the IIA. See Delthony, 119 Wash. at 299-300 (concluding in case where employee sought damages in excess of IIA benefits that specific intent, and not "'merely carelessness or negligence, however gross,'" was enough to satisfy the requirements of RCW 51.24.020 (quoting Jenkins v. Carman Mfg. Co., 79 Or. 448, 155 P. 703 (1916))).

The legislature also indicated that it intended the IIA to eliminate causes of action in a section of the IIA outlining the penalties faced by an employer that failed to pay into the workers' compensation accident fund.

> If any employer shall default in any payment to the accident fund hereinbefore in this act required, the sum due shall be collected by action at law in the name of the state as plaintiff, and

---

[7] As our Supreme Court explained in Clausen, our constitution permits the legislature to define that which constitutes a cause of action. 65 Wash. at 210. Indeed, the creation of new causes of action is not an uncommon occurrence in Washington law. See e.g., Folweiler Chiropractic, PS v. Am. Family Ins. Co., 5 Wn. App. 2d 829, 835-36, 429 P.3d 813 (2018) ("The [Consumer Protection Act, ch. 1986 RCW] authorizes a private cause of action." (quoting Panag v. Farmers Ins. Co. of Wash., 166 Wn.2d 27, 37, 204 P.3d 885 (2009))), review denied, 193 Wn.2d 1001 (2019); Macias, 175 Wn.2d at 409 (explaining that the WPLA's statutory claims "supplant[ed] all common law claims or actions based on harm caused by a product"); Federated Servs. Ins. Co. v. Pers. Representative of Estate of Norberg, 101 Wn. App. 119, 126, 4 P.3d 844 (2000) (citing RCW 4.20.010, 4.24.010); Gray v. Goodson, 61 Wn.2d 319, 325, 378 P.2d 413 (1963) (stating that the wrongful death statutes "create new causes of action for the benefit of specific surviving relatives to compensate for losses caused to them by the decedent's death").

such right of action shall be in addition to any other right of action or remedy. In respect to any injury happening to any of his workmen during the period of any default in the payment of any premium under section 4, the defaulting employer shall not, if such default be after demand for payment, be entitled to the benefits of this act, but *shall be liable to suit by the injured workman* (or the husband, wife, child or dependent of such workman in case death result from the accident), *as he would have been prior to the passage of this act.*

LAWS OF 1911, ch. 74, § 8 (emphasis added).

By authorizing a right of action in circumstances in which an employer defaulted on payments to the accident fund, the legislature identified the effect of the IIA as eliminating the right of action in circumstances in which an employer properly made payments into the accident fund. While the language authorizing employees to file tort actions against defaulting employers was subsequently removed from the act—it was replaced with financial penalties for employers who default on payments, see LAWS OF 1917, ch. 28, § 2; LAWS OF 1917, ch. 120, § 5; Freyman v. Day, 108 Wash. 71, 72, 182 P. 940 (1919)—we look to it now because it demonstrates the 1911 legislature's belief that the superior courts retained original subject matter jurisdiction to decide cases brought against employers by employees seeking to recover damages for workplace injuries.

Additionally, we note that more recently, in 1993, our legislature amended RCW 4.22.070, which sets forth the manner in which tort liability is proportioned among at-fault entities. LAWS OF 1993, ch. 496, § 1. As amended, RCW 4.22.070(1) directs that "the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages except entities *immune from liability* to the claimant under Title 51." (Emphasis added.) Thus did the legislature expressly state that Title 51 RCW

13

grants immunity from liability. The legislature, in other words, reaffirmed that Title 51 RCW prevents employees from recovering, through a tort action, against employers for workplace injuries resulting from the negligence of the employer.

2

We next consider whether any reported case law compels us to conclude that the IIA divested Washington's superior courts of any aspect of their constitutionally granted original subject matter jurisdiction.[8] No such decision does so.

We first note that Clausen did not hold that the IIA had an effect on the original subject matter jurisdiction of the superior court. Furthermore, when presented with a direct challenge to Clausen in Mountain Timber Co., our Supreme Court reaffirmed that the IIA "abolished rights of actions and defenses." 75 Wash. at 583. Neither Clausen nor Mountain Timber Co., which together encompass our Supreme Court's earliest comprehensive review of the effects of the IIA, declared that the IIA had an effect on the original subject matter jurisdiction of the superior court.

It was not until four years after Clausen, in Replogle v. Seattle School District No. 1, 84 Wash. 581, 586, 147 P. 196 (1915), that our Supreme Court would first declare that causes of action for injuries subject to the IIA had been "withdrawn from the jurisdiction of the courts." To declare, however, that causes of action have been eliminated and thus removed from the jurisdiction of

---

[8] Hence, we examine the distinction between eliminating causes of action and eliminating original subject matter jurisdiction.

Washington's superior courts is not the same as declaring that the IIA divested Washington's superior courts of original subject matter jurisdiction.

In Replogle, the court considered a cause of action brought by an employee against his employer, Seattle School District No. 1, for injuries sustained while on the job repairing an electric motor. 84 Wash. at 581-83. The District asserted, as an affirmative defense, that employee Replogle had been engaged in extrahazardous employment covered by the IIA and that he could therefore not bring a civil action against the District. Replogle, 84 Wash. at 582-84. The superior court did not agree and a trial resulted in entry of judgment in favor of Replogle. Replogle, 84 Wash. at 583-84. On appeal, the Supreme Court reversed. Replogle, 84 Wash. at 587.

The Supreme Court's decision framed the issue as one pertaining to jurisdiction, and declared that the employee's cause of action had been "withdrawn from the jurisdiction" of the superior court. Replogle, 84 Wash. at 586. However, the Supreme Court did not conduct any jurisdictional analysis in its decision. Instead, the Supreme Court asserted that the analysis in its prior decision in Peet v. Mills, 76 Wash. 437, 136 P. 685 (1913) (which set forth the IIA-abolishing-causes-of-action analysis from Clausen and Mountain Timber Co., Peet, 76 Wash. at 439-41) was controlling. Replogle, 84 Wash. at 585-86. Given this context, it is clear that Replogle did not overrule or repudiate Clausen. Neither did it conclude that the IIA divested the superior court of original subject matter jurisdiction. Instead, it held that the superior court cannot exercise its authority over causes of action that have been abolished because without a

cause of action there is nothing for the superior court to act on. This brings to mind our Supreme Court's recent acknowledgement that in the past it had sometimes utilized the term jurisdiction to mean a court's "authority to enter an order in a particular case." Buecking, 179 Wn.2d at 448. As our Supreme Court has now explained, such use of the word jurisdiction does not properly refer to subject matter jurisdiction. Buecking, 179 Wn.2d at 448.

While Replogle framed the issue therein presented as pertaining to jurisdiction, it was not until 1978 that our Supreme Court announced as a holding that the IIA impacted the subject matter jurisdiction of the superior court over tort actions for workplace injuries. In Seattle-First National Bank v. Shoreline Concrete Co., 91 Wn.2d 230, 242, 588 P.2d 1308 (1978), the court observed that "the Act 'immunizes,' from judicial jurisdiction, all tort actions which are premised upon the 'fault' of the employer vis-à-vis the employee." This statement was unremarkable and entirely consistent with Clausen.

The court, however, then went further, stating that "[w]e thus hold that under the Act the courts have no jurisdiction over an action premised upon or necessarily involving this 'immunized' area of tort law." Seattle-First, 91 Wn.2d at 242. The claims at issue, the court explained, "are based upon the 'immunized' conduct of [the employer] vis-à-vis decedent [employee;] they are not judicially cognizable." Seattle-First, 91 Wn.2d at 243.

The court then announced its decision on the issue presented:

> Since none of the third-party claims asserted against [the employer] arose from conduct independent of that 'immunized' by the Act, we hold that the trial court erred in directing that [the employer] remain a party to the third-party actions.

16

Seattle-First, 91 Wn.2d at 244.

It is plain that the court's ultimate holding, quoted above, was not dependent on the court's first holding—that the superior court lacked subject matter jurisdiction.

Indeed, the issues presented were whether an employer's fault may be considered to reduce damages obtainable by an employee suing a third party and whether the third party may implead the employer as a defendant. Seattle-First, 91 Wn.2d at 241-42. As with Replogle, although the court declared that the IIA "immunized" tort actions against employers from judicial jurisdiction, to support this declaration the court cited only to cases that utilized the Clausen cause of action analysis. Seattle-First, 91 Wn.2d at 241-42 (citing Kelley v. Howard S. Wright Constr. Co., 90 Wn.2d 323, 327, 582 P.2d 500 (1978) ("Kelley's employer, H. H. Robertson, is covered by the State Industrial Insurance Act and is immune from liability in any action for Kelley's injuries."); Ledesma v. A. F. Murch Co., 87 Wn.2d 203, 205, 550 P.2d 506 (1976) ("The exclusive remedy provisions of the [IIA] . . . act, therefore, as an absolute bar to plaintiffs' cause of action."); West v. Zeibell, 87 Wn.2d 198, 201, 550 P.2d 522 (1976) ("[T]he intent of the legislature to bar an action such as that brought by plaintiffs is clear."); Greenleaf v. Puget Sound Bridge & Dredging Co., 58 Wn.2d 647, 649, 364 P.2d 796 (1961) ("[T]he industrial insurance act affords immunity to the employer only. It is not a bar to an action against a negligent third party."); Stertz, 91 Wash. at 595 ("[T]he [IIA's] first section put an end to all civil actions appertaining to master and servant liability.")). Furthermore, the court did not

17

contend that it was overruling the Clausen analysis or disagreeing with the application of that analysis as set forth in the various cases it cited in support of its conclusions. Therefore, as with Replogle, it is apparent that Seattle-First is yet another example of what our Supreme Court declared in Buecking to be the inconsistent usage of the term jurisdiction to refer to a court's authority to enter orders in a case. See Buecking, 179 Wn.2d at 448.

Most recently, in dicta in Posey, our Supreme Court again described Title 51 RCW as affecting the jurisdiction of the superior court over common law tort claims for workplace injuries. 174 Wn.2d at 136. The court therein held that "the legislature cannot deprive the superior courts of their constitutional jurisdiction over felony offenses." Posey, 174 Wn.2d at 135. This is so, according to the court, because the constitution specifically enumerates felony offenses as a type of proceeding over which the superior court has original subject matter jurisdiction, and such enumerated jurisdiction cannot be modified by the legislature. Posey, 174 Wn.2d at 140.

Unrelated to its analysis of the issue presented in the case, as part of its explanation of the superior court's constitutionally granted original residual subject matter jurisdiction, the court observed that

> [i]t is with respect to cases and proceedings that fall within the residual jurisdiction of the superior courts that the legislature can vest exclusive jurisdiction in an alternative forum. For example, by limiting the common law tort claims of injured workers and creating administrative procedures and enhanced remedies under the Industrial Insurance Act, Title 51 RCW, the legislature effectively modified the role of the superior courts over such claims.[9]

---

[9] Related to this assertion, the court cited two cases, Lidke v. Brandt, 21 Wn.2d 137, 150 P.2d 399 (1944), and Dougherty v. Dep't of Labor & Indus., 150 Wn.2d 310, 76 P.3d 1183 (2003). Neither of these decisions resolved issues pertaining to the original subject matter jurisdiction of

18

Posey, 174 Wn.2d at 136.

Once again, even if this observation was other than dicta, it did not purport to overrule Clausen. Furthermore, the IIA did limit common law tort claims of injured workers and, by so doing, it did modify the role of the superior courts over such claims. All of that is true and correctly stated in Posey. That truth, however, does not mean that the act diminished the original subject matter jurisdiction of the superior court.

This postulation is reinforced by the analysis of subject matter jurisdiction presented in Posey itself, in which the majority notes that "[i]t is conceptually incoherent to suppose that a court's power to determine a case depends on its determination in the case." 174 Wn.2d at 139. Indeed, perhaps inadvertently, the court's use of the term "alternate forum" misstates the constitutional requirement that residual subject matter jurisdiction be legislatively placed exclusively in another *court* in order to limit the subject matter jurisdiction of the superior court. See CONST. art. IV, § 6 ("The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested *exclusively in some other court.*" (emphasis added)).[10] Thus, Posey does not set forth a holding that the IIA divested the

the superior court. Rather, they pertained to the appellate jurisdiction of the superior court over decisions of the Board of Industrial Insurance Appeals. Dougherty, 150 Wn.2d at 314-15; Lidke, 21 Wn.2d at 139. Neither of these decisions held that the IIA divested the superior court of original subject matter jurisdiction, nor did these decisions overrule Clausen.

[10] Workers' compensation claims must be initiated in an executive branch agency. That is not a court. See CONST. art. IV, § 1 ("**JUDICIAL POWER, WHERE VESTED.** The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide.").

19

superior court of original subject matter jurisdiction over claims brought by employees against their employers for workplace injuries.

3

Our next task is to utilize the jurisdictional framework set forth in Posey to analyze whether, upon its adoption or at any later time, the IIA divested Washington's superior courts of original subject matter jurisdiction. Weyerhaeuser asserts that the superior courts lack subject matter jurisdiction over actions against an employer "to obtain relief for workers injured in their work." Our analysis leads to a contrary conclusion.

As our Supreme Court noted in Posey, our constitution grants the superior courts two forms of original subject matter jurisdiction, enumerated and residual. 174 Wn.2d at 135-36. Again, in the enumerated categories, "where the constitution specifically grants jurisdiction to the superior courts, the legislature cannot restrict the jurisdiction of the superior courts." Posey, 174 Wn.2d at 135 (citing Blanchard v. Golden Age Brewing Co., 188 Wash. 396, 418, 63 P.2d 397 (1936)). In contrast, the constitution permits the legislature to vest subject matter jurisdiction in other courts for those cases and proceedings arising outside of the enumerated list. CONST. art. IV, § 6; Posey, 174 Wn.2d at 136. These latter cases and proceedings comprise the original residual subject matter jurisdiction of Washington's superior courts.[11]

One of the enumerated categories of cases in our constitution over which the superior court is given original subject matter jurisdiction is "all other cases in

---

[11] Both forms of original subject matter jurisdiction are subject to alteration by constitutional amendment.

20

which the demand or the value of the property in controversy amounts to three thousand dollars or as otherwise determined by law." CONST. art. IV, § 6. Thus, barring a constitutional amendment, it is clear that any tort action filed by an employee against an employer for workplace injuries demanding amounts of at least $3,000 is within the enumerated original subject matter jurisdiction of the superior court and cannot possibly have been diminished by legislative enactment. See Posey, 174 Wn.2d at 135-36; see also ZDI Gaming Inc. v. Wash. State Gambling Comm'n, 173 Wn.2d 608, 630, 268 P.3d 929 (2012) (Johnson, J., dissenting) ("So long as the amount in controversy surpasses the jurisdictional threshold, a superior court's original jurisdiction comes directly from the state constitution.").

Similarly, even for claims for workplace injuries demanding less than $3,000, and thus falling within the residual original subject matter jurisdiction of the superior court, the IIA still could not have divested the superior court of original subject matter jurisdiction. We say this because the act did not assign original subject matter jurisdiction over common law tort actions for workplace injuries to any other court.[12] Instead, it abolished such common law tort actions, replacing them with a statutory indemnity. See Clausen, 65 Wash. at 210-11. Therefore, it must be that the IIA, which did not amend the constitution, could not have divested Washington's superior courts of original subject matter jurisdiction over tort actions filed by employees against employers seeking to recover damages for workplace injuries.

---

[12] See n.10, supra.

In support of its contention that the superior court lacked original subject matter jurisdiction, Weyerhaeuser cites to the portion of RCW 51.04.010 that states that "all jurisdiction of the courts of the state over [workplace injury actions] are hereby abolished, except as in this title provided," and <u>Deeter v. Safeway Stores, Inc.</u>, 50 Wn. App. 67, 747 P.2d 1103 (1987). Neither persuades us that the superior court lacked original subject matter jurisdiction herein.

First, although RCW 51.04.010 states that "all jurisdiction of the courts of the state over [workplace injury actions] are hereby abolished, except as in this title provided," this language does not purport to (and could not) abolish the original subject matter jurisdiction of the superior court. As just discussed above, the legislature lacks the authority to divest the superior court of its constitutionally granted subject matter jurisdiction over tort actions for workplace injuries. <u>See</u> CONST. art IV, § 6; <u>see also</u> <u>Posey</u>, 174 Wn.2d at 135; <u>ZDI Gaming Inc.</u>, 173 Wn.2d at 630 (Johnson, J. dissenting) ("While the legislature can restrict the superior court's jurisdiction by changing the amount-in-controversy requirement or abolishing the substantive law for a particular type of common law tort claim, the legislature cannot otherwise restrict the type of tort controversy that a superior court may adjudicate." (citation omitted)). Furthermore, as we discussed in Part II.B.1, RCW 51.24.020, establishing a statutory cause of action for workplace injuries resulting from the deliberate intent of the employer to cause such injuries, indicates that the legislature considered the operative effect of the IIA to be the abolishment of causes of action.[13] <u>See Amalg. Transit Union Local</u>

---

[13] Additionally, although subsequently removed from the ambit of the act, the inclusion in the original IIA of a right of action against employers for workplace injuries when the employer

22

587 v. State, 142 Wn.2d 183, 220, 11 P.3d 762, 27 P.3d 608 (2000) ("The meaning of language must also be determined from the enactment as a whole, with each provision read in relation to the other provisions." (citing City of Seattle v. Dep't of Labor & Indus., 136 Wn.2d 693, 698, 965 P.2d 619 (1998); Hubbard v. Dep't of Labor & Indus., 140 Wn.2d 35, 43, 992 P.2d 1002 (2000))). Moreover, as our Supreme Court has noted, the judicial use of the term jurisdiction in Washington, in the past, encompassed a court's authority to enter orders in an action. Buecking, 179 Wn.2d at 448. In light of past judicial imprecision and confusion surrounding use of the word jurisdiction, and as the IIA does not define the term, the legislature's invocation of the word jurisdiction in RCW 51.04.010 is best understood as a reference to the superior court's authority to enter orders in an action—an imprecise use of the term in the context of a court's authority when presented with an abolished cause of action.

Second, Deeter does not even address Weyerhaeuser's contention that the IIA divested the superior court of original subject matter jurisdiction. In Deeter, Safeway moved to dismiss Deeter's claims for lack of subject matter jurisdiction, the trial court dismissed Deeter's claims, and we affirmed on appeal. 50 Wn. App. at 72, 79. However, as our decision explicitly states, the trial court therein did not rule that it lacked original subject matter jurisdiction. Instead, it "ruled that the Deeters had failed to establish a prima facie case of an intentional tort by Safeway." Deeter, 50 Wn. App. at 72. In our decision, we simply

---

had defaulted on payments to the accident fund clearly denotes the legislature's belief that Washington's superior courts retained subject matter jurisdiction over civil actions brought by employees against their employers to recover damages for workplace injuries. See LAWS OF 1911, ch. 74, § 8.

explained that "the exclusivity provisions of the IIA bar an action against the employer for an injury incurred by the worker in the course of employment." Deeter, 50 Wn. App. at 73. Nothing in the Deeter opinion supports Weyerhaeuser's contention that the superior court herein lacked original subject matter jurisdiction.

Measured against the demands of the Washington Constitution, nothing the Washington legislature has enacted as part of the IIA has divested Washington's superior courts of any part of their constitutionally granted original subject matter jurisdiction.

C

In support of the trial court's ruling, Weyerhaeuser asserts that the Louisiana state legislature divested Washington's superior courts of original subject matter jurisdiction when it enacted workers' compensation legislation in Louisiana. This is not so.

Although Congress or the Washington state legislature may affect the residual original subject matter jurisdiction of Washington superior courts, the legislatures of other states do not have the power to limit the constitutionally-granted subject matter jurisdiction of Washington superior courts. See McDermott, 175 Wn. App. at 481 n.5 ("It goes without saying that the Washington Legislature cannot confer subject matter jurisdiction upon the trial courts of Kansas."). Indeed, it would be a remarkable perversion of our republican form of government, see U.S. CONST. art. IV, § 4, for Louisiana's state legislature—containing no members voted into office by any residents of Washington—to

24

have the power to supersede the Washington Constitution and limit the subject matter jurisdiction of Washington courts. The Louisiana legislature plainly does not have the power to divest Washington's superior courts of subject matter jurisdiction granted to them by the Washington Constitution.

D

The question of employer immunity from actions for workplace injuries does not, in fact, raise any issues pertaining to the original subject matter jurisdiction of the superior court. Thus, a CR 12(b)(1) motion to dismiss for lack of subject matter jurisdiction was the improper vehicle for Weyerhaeuser's assertion of employer immunity.[14] An assertion of immunity is not a jurisdictional argument but, as explained in Clausen, is an assertion that the plaintiff employee has failed to assert a viable cause of action. See 65 Wash. at 210-11.

CR 12 sets forth the appropriate motion for such an assertion, a CR 12(b)(6) motion for the failure to state a claim upon which relief may be granted.[15]

---

[14] Even though Weyerhaeuser's assertion of immunity is premised on the substantive law of Louisiana, we still apply Washington procedural law to determine the proper mechanism through which Weyerhaeuser should have asserted immunity in a Washington court. See RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 122 (AM. LAW INST. 1971) ("A court usually applies its own local law rules prescribing how litigation shall be conducted."); see also In re Marriage of Ulm, 39 Wn. App. 342, 345, 693 P.2d 181 (1984) (explaining that Washington may apply its own statute of limitation to actions seeking to enforce foreign judgments because such limitation is procedural); Smith v. Am. Mail Line, Ltd., 58 Wn.2d 361, 366, 363 P.2d 133 (1961) (concluding that Washington courts apply their own procedural rules and applying Washington's standards for deciding a motion for a new trial).

We further note that Louisiana, like Washington, treats assertions of employer immunity procedurally as an affirmative defense. Brown v. Adair, 846 So. 2d 687, 690 (La. 2003) ("[T]he tort immunity provided by the [Workers' Compensation] Act operates as an affirmative defense; it . . . serves as a vehicle for asserting a substantive defense that defeats an otherwise viable claim."). In Louisiana, an affirmative defense is a defense that "raises [a] new matter which, assuming the allegations in the petition to be true, constitutes a defense to the action and will have the effect of defeating plaintiff's demand on its merits." Webster v. Rushing, 316 So. 2d 111, 114 (La. 1975). Thus, it is straightforward to apply Washington procedural law to review assertions premised on the law of Louisiana as it relates to employer immunity from suits brought for workplace injuries.

[15] CR 12(b) states, in pertinent part:

The superior court should either have treated Weyerhaeuser's motion as a CR 12(b)(6) motion or denied the CR 12(b)(1) motion as failing on its merits. See e.g., State v. Adams, 107 Wn.2d 611, 620, 732 P.2d 149 (1987) (considering pleadings on their facts, not their titles); Colo. Nat'l Bank of Denver v. Merlino, 35 Wn. App. 610, 614, 668 P.2d 1304 (1983) (measuring motions by their content rather than their form or language).

III

Having now identified the proper procedural method under CR 12 through which the superior court should have analyzed Weyerhaeuser's assertion of employer immunity, we turn to the immunity arguments presented in this case. Weyerhaeuser asserts that it is immune from suit because it is Boudreaux's statutory employer under Louisiana's "two contract defense." In response, Boudreaux asserts that some of his injuries occurred outside of the scope of the "two contract defense," and that Weyerhaeuser may be sued to recover for injuries outside of that defense. Boudreaux has the better argument.

We review dismissals pursuant to CR 12(b)(6) de novo. Wash. Trucking Ass'ns v. State Emp't Sec. Dep't, 188 Wn.2d 198, 207, 393 P.3d 761 (2017). "Under CR 12(b)(6), dismissal is appropriate only when it appears beyond doubt that the claimant can prove no set of facts, consistent with the complaint, which would justify recovery." San Juan County v. No New Gas Tax, 160 Wn.2d 141,

---

How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted.

164, 157 P.3d 831 (2007). On review, we presume "the truth of the allegations [of the complaint] and may consider hypothetical facts not included in the record."[16] Wash. Trucking Ass'ns, 188 Wn.2d at 207.

Much like Washington's IIA, Louisiana's workers' compensation statutes "reflect[] a compromise between the competing interests of employers and employees" whereby the employers give up defenses otherwise enjoyable in cases where they are not at fault while the employee surrenders the right to full damages. Allen v. State ex rel. Ernest N. Morial-New Orleans Exhibition Hall Auth., 842 So. 2d 373, 377 (La. 2003). To prevent employers from escaping the absolute liability imposed by workers' compensation legislation, the Louisiana legislature "provided that some principals were by statute deemed, for purposes of liability for workers' compensation benefits, the employers of employees of other entities." Allen, 842 So. 2d at 377-78.

Specifically, Louisiana's workers' compensation statutes provide tort immunity for a "principal" statutory employer when that employer "undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the 'contractor,' for the execution by or under the contractor of the whole or any part of the work

---

[16] This points to another error in the trial court proceeding: the trial court weighed the evidence in making its ruling. Whether this was proper in the context of a CR 12(b)(1) motion (an issue the parties hotly contest), it definitely was not proper for a CR 12(b)(6) motion. Moreover, although CR 12(b) provides that CR 12(b)(6) motions may be converted to motions for summary judgment under CR 56 where material outside of the pleadings is considered by the trial court, and the trial court herein considered evidence beyond the pleadings, we decline to consider this evidence on review. CR 12(b) specifically conditions the conversion of CR 12(b)(6) motions on the requirement that all parties "be given reasonable opportunity to present all material" pertinent to a summary judgment motion. Herein, Boudreaux did not have such a reasonable opportunity to present evidence pertinent to a summary judgment motion because Weyerhaeuser successfully moved to stay discovery.

27

undertaken by the principal." LA. STAT. ANN. § 23:1061(1). The statute further provides that an implied statutory employer relationship exists only "whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer."[17] LA. STAT. ANN. § 23:1061(2); see also LA. STAT. ANN. § 23:1061(3). This "two contract defense" applies when "(1) the principal enters into a contract with a third party; (2) pursuant to that contract, work must be performed; and (3) in order for the principal to fulfill its contractual obligation to perform the work, the principal enters into a subcontract for all or part of the work performed." Allen, 842 So. 2d at 379.[18]

The parties herein dispute whether all of Boudreaux's injuries occurred while he performed work contemplated by Weyerhaeuser's contracts with third parties. The complaint, however, does not specify one way or the other, it simply alleges that Boudreaux was injured during the time period of December 2016

---

[17] A statutory employer relationship can also be explicitly provided for in a contract between a statutory employer and a contractor, but neither party herein contends that Weyerhaeuser's contract with Boudreaux's employer explicitly stated that Weyerhaeuser was a statutory employer.

[18] The parties devote a significant portion of their briefing to analyzing whether or not there is a "temporal requirement" to the "two contract defense." Their argument centers on a misinterpretation of Allen by the trial court. Allen considered whether the order in which the two contracts necessary for the defense were entered into has any effect on the availability of the defense, and concluded that it has no effect. 842 So. 2d at 382 ("Regardless of the timing of the contracts between the principal contractor and the employer, if the injured employee is engaged in the principal's work 'at the time of the injury,' under the clear definition of 'principal' the triggering event is 'at the time of injury,' not the timing of the contracts."). The trial court, however, appears to have taken the Allen holding to mean that injuries occurring prior to or after the completion of any Weyerhaeuser contracts with third parties are always still within the ambit of the "two contract defense." But this is not necessarily so. The statute is very clear that what matters is whether, at the time of injury, the employee is performing work "contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer." LA. STAT. ANN. § 23:1061(2). If a contractor's employee performs work for the principal outside of the scope contemplated by that employer's contracts with third parties, and is injured, the principal may not claim immunity under the "two contract defense."

through June 2017 while performing work for Weyerhaeuser. Thus, the question we must resolve is whether, hypothetically, it is possible that Weyerhaeuser's contracts may not have contemplated all of the work Boudreaux performed for Weyerhaeuser during which he was injured by his exposure to Gen-4 Flak Jacket. We conclude that, on the facts presented in the complaint and the additional hypothetical facts proposed by Boudreaux, a jury could find that Weyerhaeuser was not Boudreaux's statutory employer at the time of injury.

Boudreaux asserts that he was injured while performing work outside of the contemplation of Weyerhaeuser's third-party contracts, specifically by performing testing prior to production runs of Gen-4 Flak Jacket coated joists and by destroying leftover coated joists following the termination of Weyerhaeuser's contracts with third parties.[19] These hypothetical facts are sufficient to avoid dismissal for failure to state a claim upon which relief may be granted. See FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 963, 331 P.3d 29 (2014) ("'Therefore, a complaint survives a CR 12(b)(6) motion if *any* set of facts could exist that would justify recovery.'" (quoting Hoffer v. State, 110 Wn.2d 415, 420, 755 P.2d 781 (1988))). Based on these facts, a jury could find that Weyerhaeuser was not Boudreaux's statutory employer at the time of injury. Boudreaux successfully stated a claim for which relief could be granted.

---

[19] In briefing, Weyerhaeuser asserts that preproduction trials and postproduction clean-up work are "plainly contemplated in any manufacturing contract or product sales contract." Weyerhaeuser offers no support for this conclusion. As such, it is not a fact. See Grimwood v. Univ. of Puget Sound, Inc., 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988) (explaining that conclusions are not facts).

IV

Weyerhaeuser contends, in the alternative, that we should affirm the dismissal of Boudreaux's claims under the doctrine of forum non conveniens. Because the trial court did not rule on Weyerhaeuser's forum non conveniens argument, we decline to consider it.

Under the doctrine of forum non conveniens, trial courts have "the discretionary power to decline jurisdiction when the convenience of the parties and the ends of justice would be better served if the action were brought in another forum." J.H. Baxter & Co. v. Cent. Nat'l Ins. Co. of Omaha, 105 Wn. App. 657, 661, 20 P.3d 967 (2001). As the matter is discretionary, we review such decisions only for an abuse of discretion. J.H. Baxter & Co., 105 Wn. App. at 661.

But the trial court herein declined to rule on Weyerhaeuser's forum non conveniens argument. Thus, there was no exercise of discretion by the trial court for us to review on appeal. To rule on Weyerhaeuser's forum non conveniens argument would require us to improperly exercise the discretion granted to the trial court. We decline to do so.

V

We conclude (1) that Weyerhaeuser did not raise a jurisdictional issue in its CR 12(b)(1) motion to dismiss, (2) that the proper procedure through which Weyerhaeuser should have asserted employer immunity in this case was through a CR 12(b)(6) motion for failure to state a claim upon which relief can be granted, and (3) that Boudreaux's complaint did state a claim for which relief could be

granted.  Therefore, we reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

_____ Dwyer, J.

WE CONCUR:

_____ Mann, A.C.J.

_____ Appelwick, C.J.